# United States Court of Appeals for the Federal Circuit

04-3442

LOURDES M. GARCIA,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Katherine A. McDonough, Baptiste & Wilder, P.C., of Washington, DC, argued for petitioner.

Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Deborah A. Bynum, Assistant Director; and Steven J. Abelson, Attorney. Of counsel on the brief was Francesca Alvaro, Attorney, Associate Chief Counsel's Office, United States Customs and Border Protection, United States Department of Homeland Security, of Miami, Florida.

Joyce G. Friedman, Attorney, Office of the General Counsel, United States Merit Systems Protection Board, of Washington, DC, argued for amicus curiae Merit Systems Protection Board. With her on the brief were Neil A.G. McPhie, Chairman; Martha B. Schneider, General Counsel; and Rosa M. Koppel, Deputy General Counsel.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3442

LOURDES M. GARCIA,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED:  February 10, 2006

_____

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, Circuit Judges, CLEVENGER, Senior Circuit Judge, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST, in which Chief Judge MICHEL and Circuit Judges MAYER, LOURIE, Senior Circuit Judge CLEVENGER, Circuit Judges RADER, SCHALL, BRYSON, GAJARSA, and LINN join.  Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judge NEWMAN joins.

PROST, Circuit Judge.

Lourdes Garcia appeals the dismissal of her claim for constructive reduction in grade by the Merit Systems Protection Board (the "MSPB" or "Board").  The Board determined that Ms. Garcia had not proven that her actions were involuntary and therefore dismissed Ms. Garcia's case for lack of jurisdiction without granting her a hearing.  Garcia v. Dep't of Homeland Sec., No. DC0752040110-I-1, slip op. at 3 (M.S.P.B. Jan. 22, 2004) ("Initial Decision").  Because the Board did not adequately

determine whether or not Ms. Garcia had presented non-frivolous allegations, we vacate and remand.

I

An adverse action is an official action taken by a federal agency and imposed on an employee, such as an actual removal from employment or an actual reduction in grade or pay. 5 U.S.C. § 7512 (2000). Such official action is by statute clearly within the jurisdiction of the Board, and an aggrieved employee can appeal such an action to the Board for a determination as to whether the action was proper. 5 U.S.C. § 7513(d) (2000). This case, however, does not involve an official adverse action. Instead, it deals with what is known as a constructive adverse action. A constructive adverse action arises when an agency's conduct leaves an employee no alternative but for the employee, involuntarily, to impose the adverse action on himself or herself. For example, although a resignation is ostensibly a voluntary separation from employment, it is possible that an employee can be coerced into resigning by actions of the employing agency. In other words, the facially voluntary action by the employee may actually be involuntary. Such an involuntary adverse action is known as a constructive adverse action, and a long line of cases has established that the Board's jurisdiction extends to an involuntarily imposed adverse action. Here, Ms. Garcia alleges that she applied for and involuntarily accepted a reduction in grade because her employer failed to accommodate her disability. Further, Ms. Garcia alleges that the constructive adverse action was prompted by a violation of her rights to be free from discrimination in the workplace. Because her case presents questions both of possible adverse action and possible discrimination, it is a "mixed" case in the vernacular of our case law.

In Cruz v. Department of the Navy, we held that, when presented with a mixed case of constructive removal and discrimination, the Board only had authority to decide the discrimination issue if the Board had jurisdiction over the alleged constructive adverse action. 934 F.2d 1240, 1251-53 (Fed. Cir. 1991) (en banc). Cruz failed to prove that a constructive adverse action had been taken against him. In other words, Cruz had failed to prove that his resignation was involuntary. Accordingly, we concluded that the Board correctly dismissed his case for want of jurisdiction without reaching his discrimination claim. Furthermore, though not explicitly mentioned in Cruz, the standards set forth in Cruz are consistent with the Board's own regulation that places the burden on the claimant to establish jurisdiction by a preponderance of the evidence. See 5 C.F.R. § 1201.56 (2004). Since Cruz, the typical procedure in constructive adverse action cases first grants a claimant a jurisdictional hearing if the employee makes non-frivolous allegations that, if proven, could establish the Board's jurisdiction. Then, at that hearing, the claimant has the burden of establishing the Board's jurisdiction by a preponderance of the evidence.

In Spruill v. Merit Systems Protection Board, this court dealt with a case involving allegations of discrimination and violations of the Whistleblower Protection Act (the "WPA"). 978 F.2d 679 (Fed. Cir. 1992). Neither Spruill, nor the WPA, nor the Board's jurisdiction under the WPA are before us today. However, because Ms. Garcia and the Board argue that we should import Spruill's reasoning to the jurisdictional burdens under 5 U.S.C. § 7512, a discussion of Spruill as background is important.

Spruill dealt with the WPA which provides appeal rights for whistleblowers through the Individual Right of Action (the "IRA"). Codified at 5 U.S.C. § 1221(a), the

IRA gives the Board jurisdiction over certain cases in which whistleblowers allege that they have suffered reprisals for their disclosures. Our court in Spruill stated that the Board's jurisdiction over such claims is established by non-frivolous allegations. Though Spruill dealt with the IRA, later cases have cited to language in Spruill and have stated that non-frivolous allegations establish the Board's jurisdiction over a constructive adverse action. See Dorrall v. Dep't of the Army, 301 F.3d 1375, 1380 (Fed. Cir. 2002); Dick v. Dep't of Veterans Affairs, 290 F.3d 1356, 1362 (Fed. Cir. 2002).

In constructive adverse action cases, whether the Board's jurisdiction under 5 U.S.C. § 7512 is established on a showing of preponderant evidence or a non-frivolous allegation is an issue of considerable importance, especially in mixed cases. We sua sponte decided to hear Ms. Garcia's case en banc in order to resolve issues concerning the appropriate test for Board jurisdiction under the relevant statutes and regulation. For the reasons set forth below, we hold that, under 5 U.S.C. § 7512, non-frivolous allegations do not establish the Board's jurisdiction. We further hold that the Board's regulation, 5 C.F.R. § 1201.56, which requires an employee to prove the Board's jurisdiction by a preponderance of the evidence, is entitled to deference and is therefore lawful. Finally, we reaffirm our en banc holding in Cruz that in a constructive adverse action case, a claimant must prove that the action was involuntary and that the Board may not reach discrimination issues in mixed cases unless jurisdiction is established with respect to the adverse action alleged.

**II**

Lourdes Garcia assumed the position of Assistant Chief Inspector, GS-14, with the Washington, D.C. Headquarters Office of the Immigration and Naturalization Service

(the "INS" or "agency") in 1993.  The INS is now part of the Department of Homeland Security (the "DHS").  In May 2000, she injured her back and shoulder, and thereafter requested a specially adjusted ergonomic office space.  A year later, Ms. Garcia provided her supervisors with a physical therapist's ergonomic report that listed a number of deficiencies in her workplace.  As a result, the INS purchased a different chair for her.

On July 2, 2001, Ms. Garcia filed a complaint of discrimination and reprisal with the Equal Employment Opportunity Commission (the "EEOC").  She alleged racial and national origin harassment and discrimination, retaliation, and refusal to provide a reasonable accommodation for her injured shoulder and back as required by § 501 of the Rehabilitation Act.  See 29 U.S.C. § 791 (2000).

In May of 2002, another ergonomic survey found that her workplace did not meet her medical needs.  She provided the report to her supervisors but no action was taken.  Thereafter, in July 2002, Ms. Garcia tore two tendons in her right rotator cuff while at work.  She received worker's compensation for the injury and was permitted to work from home on light duty assignment until January 2, 2003.  During that time at home, Ms. Garcia learned of a vacancy for a GS-13 Deputy Assistant District Director position with the INS Miami office.  She submitted an application for the position on October 18, 2002.

On November 26, 2002, Ms. Garcia was advised that her Washington, D.C. supervisor, Colleen Manaher, had been authorized to renovate Ms. Garcia's workspace to accommodate Ms. Garcia's needs.  In a memo sent to Ms. Garcia on that date, Ms. Manaher "remained hopeful" that the renovations to Ms. Garcia's workspace would be

completed by the time Ms. Garcia had to return to work. That same memo also stated that "[i]f the work station is delayed and if your doctor continues to authorize light duty only, your duties when you return to the Office will involve only those with minimal computer usage such as operational telephonic support, scheduling, coordination issues and staff assistance."

When Ms. Garcia returned to the office as required on January 2, 2003, she discovered that, due to a lack of funding, renovations to her workspace had not yet started. On January 13, 2003, Ms. Garcia was selected for the position in Miami. She accepted that position and ultimately became a permanent employee in Miami.

Just ten days after being selected for the position in Miami, Ms. Garcia amended her discrimination complaint pending before the EEOC to allege that her acceptance of the job in Miami was an involuntary reduction in grade (i.e., a constructive demotion) that had been forced upon her because the INS in Washington refused to provide a reasonable accommodation for her disability. In accordance with its procedures, the EEOC sent that portion of the case back to the INS.

When the INS failed to act on Ms. Garcia's case, Ms. Garcia appealed her constructive demotion directly to the Board where she requested a hearing. Her case was directed to an administrative judge who decided, without holding a hearing, that "having found that the appellant has not met her burden to prove that her reduction in grade was involuntary, . . . the Board does not otherwise have jurisdiction over [Ms. Garcia's] affirmative defenses of discrimination and reprisal." Initial Decision, slip op. at 7. Ms. Garcia petitioned the full Board to review the decision by the administrative judge. On July 23, 2004, the Board determined that "the administrative judge made no

error in law or regulation that affects the outcome" and denied the petition. Garcia v. Dep't of Homeland Sec., No. DC0752040110-I-1, slip op. at 1 (M.S.P.B. July 23, 2004).

Ms. Garcia appealed the Board's dismissal of her case to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9), and we sua sponte took this case en banc. In addition to the briefs from the petitioner, Ms. Garcia, and the respondent, the Department of Homeland Security, we invited the Board to submit a brief as amicus curiae. We asked that the following questions be addressed:

(1) Whether 5 U.S.C. § 7701 should be construed to incorporate a non-frivolous allegation standard for establishing the jurisdiction of the Merit Systems Protection Board;

(2) Whether, if 5 U.S.C. § 7701 is ambiguous as to the standard for jurisdiction, the Board's regulation at 5 C.F.R. § 1201.56(a)(2) is entitled to Chevron deference; and

(3) Whether if 5 U.S.C. § 7701 incorporates a non-frivolous allegation standard for establishing the jurisdiction of the Board, it should be construed to also incorporate a standard that requires a non-frivolous allegation be supported by some evidence.

**III**

**A**

The Board is an independent, quasi-judicial federal administrative agency created by the Civil Service Reform Act of 1978 (the "CSRA"). See Pub. L. No. 95-454, 92 Stat. 1111 (codified at 5 U.S.C. §§ 1101, 1201 (2000)). Congress gave the Board the responsibility, inter alia, to adjudicate appeals of adverse personnel actions taken by a federal agency against its employees. 5 U.S.C. §§ 1204(a)(1), 7512, 7513(d), and 7701(a) (2000).

The scope of the Board's subject matter jurisdiction is defined by 5 U.S.C. § 7701(a), which provides that

> [a]n employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. . . . Appeals shall be processed in accordance with regulations prescribed by the Board.

5 U.S.C. § 7701(a) (2000). As this court has stated:

> The jurisdiction of the MSPB is not plenary, but is "limited to those areas specifically granted by statute or regulation." The board has the power to hear and adjudicate all matters "within the jurisdiction of the Board under this title [5], section 2023 of title 38, or any other law, rule or regulation." In other words, jurisdiction for the board to hear a particular type of action must be granted by some law, rule or regulation. 5 U.S.C. § 7701(a) governs specifically the appellate jurisdiction of the MSPB.

Antolin v. Dep't of Justice, 895 F.2d 1395, 1396 (Fed. Cir. 1989) (citations omitted) (quoting Cowan v. United States, 710 F.2d 803, 805 (Fed. Cir. 1983) and Schaffer v. Merit Sys. Prot. Bd., 751 F.2d 1250, 1252 (Fed. Cir. 1985) respectively). See also Peter Broida, A Guide to the Merit Systems Protection Board Law and Practice 22-26 (2005).

Section 7513(d) of Title 5 of the United States Code grants the Board jurisdiction to hear appeals over certain enumerated adverse actions taken by an agency against an employee. The enumerated adverse actions are:

    (1) a removal;
    (2) a suspension for more than 14 days;
    (3) a reduction in grade;
    (4) a reduction in pay; and
    (5) a furlough of 30 days or less.

5 U.S.C. § 7512 (2000). Thus, jurisdiction under § 7512 is established if and when a claimant shows that he or she is, in fact, a covered employee as required by the statute and that the agency took one of the enumerated actions in § 7512 against the claimant. See also 5 U.S.C. § 7511 (2000) (defining covered employees for the purposes of

subchapter 75). In addition, 5 U.S.C. § 7701(a) states that "[a]ppeals shall be processed in accordance with regulations prescribed by the Board." Accordingly, the Board promulgated 5 C.F.R. § 1201.56, which states that "[t]he appellant has the burden of proof, by a preponderance of the evidence, with respect to . . . [i]ssues of jurisdiction." 5 C.F.R. § 1201.56 (2004).

Furthermore, where the Board has jurisdiction over the appeal of an agency's adverse action against an employee, Congress has also allowed certain discrimination claims that are not otherwise within the Board's jurisdiction to be decided as part of the appeal even though discrimination claims are generally made directly to the EEOC.

Section 7702(a)(1) of Title 5 of the United States Code instructs the Board that:

in the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the [Board], and
(B) alleges that a basis for the action was discrimination prohibited by [the Civil Rights Act, the Fair Labor Standards Act, the Rehabilitation Act, the Age Discrimination in Employment Act, or any rule, regulation, or policy directive prescribed under those Acts],

the Board shall . . . decide both the issue of discrimination and the appealable action . . . .

5 U.S.C. § 7702(a)(1) (2000). This statutory provision describes the Board's jurisdiction over "mixed cases." As this title suggests, "mixed cases" are ordinary appeals of adverse agency actions that are accompanied by allegations of discrimination. See Austin v. Merit Sys. Prot. Bd., 136 F.3d 782, 783 (Fed. Cir. 1998).

**B**

Nothing in 5 U.S.C. § 7512, which enumerates specific adverse actions over which the Board has jurisdiction, extends the Board's jurisdiction to facially voluntary

acts. A long line of cases, however, starting with the Board's predecessor, the Civil Service Commission (the "CSC"), dealt with this question, and generally held that seemingly voluntary actions in some circumstances may be considered adverse actions. As this court recently stated, although an "employee who voluntarily resigns or retires has no right to appeal to the MSPB[,] . . . the MSPB possesses jurisdiction over an appeal filed by an employee who has resigned or retired if . . . his or her resignation or retirement was involuntary and thus tantamount to forced removal." Shoaf v. Dep't of Agric., 260 F.3d 1336, 1340-41 (Fed. Cir. 2001) (citations omitted). In other words, "it is hornbook law . . . that an involuntary resignation constitutes an adverse action by the agency." Gratehouse v. United States, 512 F.2d 1104, 1108 (Ct. Cl. 1975).

Claimants have alleged involuntariness in a number of different ways. See Shoaf, 260 F.3d at 1341. In Cruz v. Department of the Navy, the allegation of involuntariness with regard to a resignation was based on the agency's threats of an adverse action against the employee. 934 F.2d 1240, 1251-53 (Fed. Cir. 1991) (en banc). In Covington v. Department of Health and Human Services, involuntariness was based on the agency's alleged misinformation or deception. 750 F.2d 937, 942 (Fed. Cir. 1984). Also, claimants have alleged that the agency coerced them "by creating working conditions so intolerable for the employee that he or she is driven to involuntarily resign or retire." Shoaf, 260 F.3d at 1341; Staats v. U.S. Postal Serv., 99 F.3d 1120, 1123 (Fed. Cir. 1996); Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975). Ms. Garcia's claim falls into this last category. She alleges that her reduction in grade was involuntary because she was coerced into leaving the INS in Washington, D.C. due to intolerable working conditions.

This court has adopted the so-called <u>Fruhauf</u> test for establishing involuntary coercion by an agency:

> [T]o establish involuntariness on the basis of coercion this court requires an employee to show: (1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency.

<u>Shoaf</u>, 260 F.3d at 1341; <u>see also</u> <u>Fruhauf Sw. Garment Co. v. United States</u>, 111 F. Supp. 945, 951 (Ct. Cl. 1953); <u>Staats</u>, 99 F.3d at 1124; <u>Christie</u>, 518 F.2d at 587. In evaluating involuntariness, the proper test is "an objective one," <u>Christie</u>, 518 F.2d at 587, and one that "consider[s] the totality of the circumstances," <u>Shoaf</u>, 260 F.3d at 1342. The employee must "establish that a reasonable employee confronted with the same circumstances would feel coerced into resigning." <u>Middleton v. Dep't of Defense</u>, 185 F.3d 1374, 1379 (Fed. Cir. 1999); <u>see also</u> <u>Shoaf</u>, 260 F.3d at 1342. In other words, when adjudicating a claim of coercive involuntariness, the three elements of the <u>Fruhauf</u> test are evaluated from the perspective of the reasonable employee confronted with similar circumstances. <u>Shoaf</u>, 260 F.3d at 1341-42.

In applying this objective test, our case law has also emphasized that freedom of choice is a central issue. For example, in <u>Christie</u>, our predecessor court held that

> [w]hile it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports CSC's finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff <u>had a choice</u>. She could stand pat and fight. She chose not to.

518 F.2d at 587; <u>see also</u> <u>Covington</u>, 750 F.2d at 942. As described more recently by this court in <u>Staats</u>,

04-3442                                              11

[coercive involuntariness] does not apply to a case in which an employee decides to resign or retire because he does not want to accept a new assignment, a transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave. As this court has explained, the fact that an employee is faced with an unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary.

99 F.3d at 1124.

Our cases recognize that most resignations and retirements are not constructive removals, and that "the doctrine of coercive involuntariness is a narrow one" requiring that the employee "satisfy a demanding legal standard." Id. Thus, it has long been held that "[e]mployee resignations are presumed voluntary [and] [t]his presumption will prevail unless plaintiff comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." Christie, 518 F.2d at 587. "The MSPB possesses jurisdiction over an appeal filed by an employee . . . if the employee proves, by a preponderance of the evidence, that [his or her action] was involuntary and thus tantamount to [a forced enumerated adverse action]." Shoaf, 260 F.3d at 1341; see also Dabney v. Freeman, 358 F.2d 533, 536 (D.C. Cir. 1965).

IV

In this case, Ms. Garcia alleges that the administrative judge erred by requiring her to prove the Board's jurisdiction by a preponderance of the evidence. Instead, Ms. Garcia argues that non-frivolous allegations are sufficient to establish the Board's jurisdiction. Because she contends that she has met this low threshold, she argues that she is entitled to a hearing to decide the merits of her claim. This case, therefore, squarely presents the questions of how and when the Board's jurisdiction attaches in constructive adverse actions. In more formalistic terms, it turns on the elements needed

04-3442                                    12

to establish Board jurisdiction and, furthermore, the burden of proof required to establish each of those elements.

The existing procedure for establishing jurisdiction in an adverse action can be summarized as a two step process. If a claimant makes non-frivolous allegations, in other words, allegations that, if proven, can establish the Board's jurisdiction, then the claimant is entitled to a hearing. If at the hearing the claimant establishes the Board's jurisdiction by a preponderance of the evidence, then jurisdiction attaches to the case and the Board has the power to decide the merits of the claim. The claimant's burden of proof for establishing jurisdiction is found in the Board's regulation 5 C.F.R. § 1201.56, which states that "[t]he appellant has the burden of proof, by a preponderance of the evidence, with respect to . . . [i]ssues of jurisdiction." 5 C.F.R. § 1201.56 (2004).

Recently the jurisdictional procedures outlined above for 5 U.S.C. § 7512 have been called into question and several of this court's opinions have led to suggestions that the existing procedure should be reevaluated and changed. The different approaches advocated by the parties derive from two conflicting lines of cases. The DHS relies on Cruz and its progeny along with the Board's regulation 5 C.F.R. § 1201.56. On the other hand, Ms. Garcia relies on cases like Dick and Dorrall that have taken Spruill's non-frivolous standard from the IRA and imported it into the jurisdictional burdens of constructive adverse actions. Our analysis begins with a discussion of Cruz and Spruill.

**A**

**1**

In Cruz, this court addressed the Board's jurisdiction under 5 U.S.C. § 7512, focusing specifically on the Board's jurisdiction over facially voluntary resignations especially where issues of involuntariness were mixed with claims of discrimination. Julio Cruz was an Education Services Specialist in the United States Navy (the "Navy"). On January 29, 1988, the Navy sent Cruz a Notice of Proposed Removal that listed specific instances of insubordination and unsatisfactory performance. Shortly thereafter and presumably in reaction to the proposed removal, Cruz submitted a resignation.

Cruz subsequently appealed to the Board alleging that the proposed removal was a reprisal for his previously filed EEOC complaints and that, because of the proposed removal, Cruz was coerced into resigning. The administrative judge found that Cruz had presented non-frivolous allegations and therefore granted him a hearing after which his case was dismissed for lack of jurisdiction. The administrative judge concluded that the resignation was voluntary and that the agency had reasonable grounds to propose the removal. Furthermore, the administrative judge decided that the proposed removal was not the product of discrimination. Cruz, 934 F.2d at 1242.

The Board reviewed the administrative judge's decision and concluded that Cruz failed to establish that his resignation constituted an appealable action and that the administrative judge did not err in concluding that his resignation was voluntary. But the Board also held that, because of the administrative judge's conclusion on voluntariness, the administrative judge was wrong to have also addressed the discrimination claim because the Board lacked an independent jurisdictional basis for reviewing that claim. Id.

Cruz appealed the Board's decision to this court. The original panel opinion, thereafter vacated en banc, remanded the case to the Board with instructions to decide "the discrimination issue." Id. This court then accepted the Navy's suggestion for en banc consideration of the following question: "Whether an allegation of title VII discrimination presented by a former employee expands the jurisdiction of the Merit Systems Protection Board to decide that discrimination issue where the board had already determined that it lacked jurisdiction under 5 U.S.C. § 7512 because the former employee had resigned voluntarily." Id. at 1243.

Addressing that question, this court sitting en banc held that

[t]he Board has only that jurisdiction conferred on it by Congress. The Board's limited jurisdiction as here applicable is set by a statute, 5 U.S.C. § 7512, which grants the Board jurisdiction to hear and determine challenges to specific adverse actions of agencies, including removals and four other adverse actions not here involved. . . .

. . . .

If Cruz had withdrawn his resignation . . . and if the agency procedures thus triggered had resulted in his removal, the Board would have had jurisdiction over any appeal he might have filed from that appealable adverse agency action. In that event 5 U.S.C. § 7702 would have come into play and required the Board to decide the merits of the removal action and any discrimination issue Cruz might have presented; but § 7702 merely describes what the Board must do when it has jurisdiction; it is not a grant of jurisdiction. Moreover to apply § 7702 to a case in which there is no appealable action is to re-write the statute by deleting its subsection (a)(1)(A) [from § 7702].

Id. at 1243-44 (citations omitted). In sum, this court concluded that in § 7702, Congress instructs the Board to hear discrimination claims only where the employee or applicant has been "affected by an action" which may be appealed to the Board. Thus, the en banc court held that even where there are claims of discrimination mixed with an adverse action, the Board's jurisdiction is still solely determined by considering the Board's jurisdiction over the adverse action alone.

04-3442                                    15

According to Cruz, the Board's jurisdiction over a constructive removal or demotion claim will not attach until an employee carries his or her burden of establishing that a self-initiated personnel action was coerced or otherwise involuntary. Id. at 1244. Although this requisite threshold determination often requires consideration and resolution of certain factual claims, the power to make these determinations is the result of the Board simply exercising its "jurisdiction to determine its jurisdiction." Id. Ultimately, the Board "never acquired jurisdiction" because the claimant failed to prove that his resignation was involuntary. Id. at 1248. Furthermore, this court in Cruz held that a non-frivolous allegation only entitles the employee to a hearing where he or she will have the opportunity to prove the existence of an adverse action within the Board's jurisdiction by proving his or her claim of constructive removal/demotion. Id. at 1253.

A long line of this court's opinions, consistent with and approvingly citing Cruz, have elucidated the details of involuntariness determinations. See Shoaf, 260 F.3d at 1341 (citing Cruz for the proposition that the Board "possesses jurisdiction over an appeal filed by an employee who has resigned or retired if the employee proves, by a preponderance of the evidence, that his or her retirement or resignation was involuntary and thus tantamount to forced removal") (citations omitted); Terban v. Dep't of Energy, 216 F.3d 1021, 1023-26 (Fed. Cir. 2000) (holding that the Board correctly dismissed the appeal for lack of jurisdiction under Cruz where the appellant's evidence did not show that his retirement was involuntary); Starkey v. Dep't of the Navy, 198 F.3d 851, 853 (Fed. Cir. 2000) (holding that voluntary actions are not within the Board's jurisdiction, but the Board may take jurisdiction if the employee can show that his retirement or resignation was involuntary); Tretchick v. Dep't of Transp., 109 F.3d 749, 751 (Fed. Cir.

1997) (citing Cruz for the proposition that the Board "lacks jurisdiction to hear an appeal from an employee who has voluntarily resigned," and that "[a]n employee asserting that his or her resignation was involuntary must show that it was the result of duress, coercion, or misinformation provided by the agency," otherwise the Board lacks jurisdiction over the alleged involuntary action); Staats, 99 F.3d at 1123 (holding that an employee is not entitled to a hearing on the issue of involuntariness unless he "makes a non-frivolous allegation that, if proved, would establish Board jurisdiction"); see also Bartels v. U.S. Postal Serv., 98 M.S.P.R. 280, 286-87 (2005) (Marshall, concurring) (listing cases since Spruill that favorably cite Cruz and its procedures for Board jurisdiction).

## 2

In contrast, language in this court's opinion in Spruill has been adopted in a later line of cases to support a wholly different approach for establishing the Board's jurisdiction. To begin, Spruill deals with the Board's jurisdiction under 5 U.S.C. § 1221 rather than 5 U.S.C. § 7512. In 1989, Roland Spruill filed a complaint with the EEOC alleging he was the victim of racial discrimination. One year later, the Department of Veterans Affairs "suspended Spruill for three days without pay. It stated that the sanction was for Spruill's abuse of sick leave. Spruill, alleg[ed] that the suspension was in reprisal for his filing of the EEOC complaint . . . ." Spruill, 978 F.2d at 681. Spruill sought the Board's review of his claim under the Individual Right of Action (the "IRA") provision of 5 U.S.C. § 1221. He argued before the Board that filing an EEOC complaint constituted protected whistleblowing activity under 5 U.S.C. § 2302(b)(8). The panel in Spruill held that the EEOC claim did not constitute protected

whistleblowing, and therefore affirmed the Board's dismissal of the case for lack of jurisdiction. Id. at 689. As later summarized in Lloyd v. Small Business Administration,

> 5 U.S.C. § 1221 empowers the Board to hear a claim for corrective action by an individual who believes that a personnel action was threatened, taken, or not taken because of his whistleblowing. In [Spruill], the court held that, when "a non-frivolous claim for relief has been asserted before the Board [in an IRA appeal], and the outcome is determined by whether the facts support that claim, a decision by the Board that they do not is a failure to prove the claim, not a lack of jurisdiction in the Board." The court opined that, in an IRA appeal, the Board should take jurisdiction based on a "well-pleaded complaint." The court recognized that this approach differed from that of Cruz where the court made clear that a non-frivolous constructive removal claim is not sufficient to establish jurisdiction.

96 M.S.P.R. 518, 522-23 (2004) (citations omitted).

Later panel decisions relying on Spruill have continued to apply a non-frivolous standard for IRA jurisdiction. See e.g., Spencer v. Dep't of the Navy, 327 F.3d 1354, 1356 (Fed. Cir. 2003); Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1371 (Fed. Cir. 2001); Schmittling v. Dep't of the Army, 219 F.3d 1332, 1336 (Fed. Cir. 2000); Willis v. Dep't of Agric., 141 F.3d 1139, 1142 (Fed. Cir. 1998). The Board has similarly followed these cases. See Rusin v. Dep't of the Treasury, 92 M.S.P.R. 298 (2002).

**3**

Although Spruill dealt exclusively with the IRA statute, a few opinions from this court have taken the so-called Spruill view regarding Board jurisdiction and applied it to other statutory frameworks, including § 7512 and constructive actions. See Dorrall, 301 F.3d at 1380; Dick, 290 F.3d at 1362; Walley v. Dep't of Veterans Affairs, 279 F.3d 1010, 1019 (Fed. Cir. 2002). Noting this conflict in Lloyd the Board observed that "statements from Dorrall and Dick cannot be reconciled with the unmistakable holding of Cruz, which is that the Board 'never acquire[s] jurisdiction' over the appeal if the

appellant fails to prove that he was constructively removed." 96 M.S.P.R. at 525. We agree.

In Dick, this court addressed the Board's jurisdiction over a voluntary demotion under the IRA. Although Dick did deal with an IRA appeal, the issue in Dick was whether the claimant had established the threshold jurisdictional fact of whether he had been subjected to a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii). Dick alleged that his reprisal personnel action was a constructive demotion under 5 U.S.C. § 7512. Instead of relying on the existing standard for establishing jurisdiction over an allegation of a constructive demotion, the court in Dick approvingly cited Spruill for the proposition that "[t]he Board has jurisdiction over [a constructive demotion appeal] if the government employee makes non-frivolous allegations of jurisdiction supported by affidavits or other evidence." Dick, 290 F.3d at 1361. Thus, in Dick the non-frivolous allegation standard was expanded to cover involuntary demotions under the IRA.

Furthermore, in Walley, this court also cited Spruill as supporting the lower non-frivolous standard for jurisdiction. "Based on a long line of this court's decisions, we concluded that the Board can properly reach the merits of a claim because a non-frivolous allegation is sufficient to confer jurisdiction." Walley, 279 F.3d at 1018. Echoing the distinction made in Spruill, the Walley court stated that

> [t]here are issues before the Board that are at one and the same time jurisdictional issues requiring a non-frivolous allegation for Board jurisdiction and merits issues requiring a determination in favor of the employee if relief is to be awarded. As we discuss below, in the present context the question of whether a termination occurred because of a compensable injury is one of those issues. Board jurisdiction is established by a non-frivolous allegation of a termination because of a compensable injury, but the employee can succeed on the merits only if after a hearing there is a finding that such a termination occurred. Section 1201.56 of the regulations, placing the burden of proof on the employee

with respect to "jurisdictional issues," is plainly not concerned with the first issue of technical jurisdiction (the need for a non-frivolous allegation), but rather with the second issue (concerning the ultimate merits). It places the burden of proof on the employee at a merits hearing with respect to merits issues that are also jurisdictional issues. Thus, although the regulation characterizes the issues with which it is concerned as "jurisdictional" in nature, the regulation is directed, in fact, to the allocation of the burden of proof on the merits. The consequence is that if a merits issue is one that is also "jurisdictional," the burden of proof on that merits issue remains with the employee even though, as a technical matter, the Board's jurisdiction is established by a non-frivolous allegation.

Id. at 1019.

Dick was followed shortly by Dorall. James H. Dorall retired from the United States Army Material Command on August 20, 2000. Prior to his retirement, Dorall had been the subject of potential discipline for allegedly deliberately deceiving a supervisor. Dorall's supervisors made it clear that disciplinary action was not imminent and that the supervisors did not intend to coerce Dorall to retire. Nonetheless, Dorall retired and then appealed his retirement to the Board. Thus, the case involved an allegation of a constructive removal and was squarely a removal case under 5 U.S.C. § 7512.

This court affirmed the Board's dismissal for lack of jurisdiction because Dorall had not produced sufficient evidence to support a non-frivolous allegation that he was coerced into involuntary retirement. But in so deciding, this court also stated that "[t]he Board has jurisdiction over an appeal if the government employee makes non-frivolous allegations of jurisdiction supported by affidavits or other evidence." Dorall, 301 F.3d at 1380 (citing Dick, 290 F.3d at 1361). Dorall deals not only with § 7512, but also with involuntariness. Thus by citing to Dick, the opinion in Dorall directly introduced the non-frivolous allegation standard that originated with Spruill and its analysis of the IRA into the procedural framework of constructive adverse actions.

In addition to the handful of opinions from this court that reference a non-frivolous jurisdictional standard for § 7512 and constructive adverse actions, the Board has recently also advocated adopting the Spruill approach regarding jurisdiction for constructive adverse actions. For example, in his concurring opinion in Lloyd, Board Chairman McPhie stated that "[b]ut for the en banc decision in Cruz, I would follow the Federal Circuit panel decision in [Spruill], and find that jurisdiction attaches when the appellant non-frivolously alleges that the appellant's retirement or resignation was involuntary." Lloyd, 96 M.S.P.R. at 526 (McPhie, concurring). Similarly, in Bartels v. United States Postal Service, the Board opined:

> In sum, we believe that the jurisdictional framework set out in the panel decisions in Spruill, Dorrall, [and] Dick, . . . is superior to the jurisdictional framework described in Cruz. If we were free to choose, we would adopt the former framework, and would hold that Board jurisdiction attaches when the appellant makes non-frivolous allegations that he was constructively removed. We are not free to choose, however, and instead are constrained to follow the earlier en banc decision in Cruz as opposed to the later panel decisions in Spruill, Dorrall, [and] Dick . . . . The initial decision in the present case is consistent with Cruz, and for that reason we affirm it. Still, it would be helpful to all concerned—parties, practitioners, administrative judges, Board members, even panels of the Federal Circuit—for the full court to revisit Cruz and to clarify whether it remains the law.

98 M.S.P.R. 280, 285 (2005) (citation omitted).

## B

Questions of jurisdiction are of fundamental importance generally. The proper standard for when and how the Board's jurisdiction attaches in an adverse action case is especially important here because 5 U.S.C. § 7702 grants the Board the power to

hear discrimination claims if and only if the Board otherwise has jurisdiction to hear the related adverse action.

Under the approach advocated by the Board, if a non-frivolous claim is presented to the Board, jurisdiction would attach and the Board would be obligated to hear any and all discrimination claims alleged with the constructive adverse action. This would hold even where the Board later determines that the claimant has not proven (presumably by a preponderance of the evidence) the issue of involuntariness. See Bartels, 98 M.S.P.R. at 283-84. In that circumstance, the constructive action claim would be dismissed for failure to state a claim upon which relief can be granted but the discrimination claim would still be heard by the Board.

In contrast, the outcome is quite different if the Board's jurisdiction is established only when the claimant has proven by a preponderance of the evidence that he or she has been subjected (officially or constructively) to one of the enumerated adverse actions in § 7512. If at any point during the case the Board determines that the claimant has not carried this burden, then jurisdiction never attaches to the adverse action case and the Board never has the power to decide the discrimination issue. Thus, although this case revolves around the proper burden of proof to establish the Board's jurisdiction under § 7512, the proper delineation of a claimant's jurisdictional burden has far reaching implications for the Board's power.

Against this background, we now address the following:

(1) whether 5 U.S.C. § 7701 compels a non-frivolous burden of proof for jurisdiction;

(2) whether the Board's own regulation (5 C.F.R. § 1201.56(a)(2)(i)) is inconsistent with the statute; and

(3) whether this court en banc should change anything in our earlier en banc decision in Cruz, and specifically, whether the Board's cases under § 7701 should be dismissed for lack of jurisdiction or failure to state a claim when the claimant fails to carry the burden on jurisdictional issues by a preponderance of the evidence.

**1**

Ms. Garcia, interpreting § 7701, alleges that jurisdiction attaches when an employee makes non-frivolous claims. She relies on the historical context and precedent that existed prior to the formation of the Board and cites Supreme Court case law supporting the rule that non-frivolous allegations of a federal claim establish Article III federal question jurisdiction. See, e.g., Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 71-72 (1978); Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 249 (1951); Bell v. Hood, 327 U.S. 678, 682 (1946); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913). Ms. Garcia also cites a number of Supreme Court cases for the proposition that Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts. See Cannon v. Univ. of Chi., 441 U.S. 677, 696-98 (1979); see also MidAtlantic Nat'l Bank v. N.J. Dep't Envtl. Prot., 474 U.S. 494, 501 (1986); Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 266-67 (1979); Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 932 (Fed. Cir. 2000).

Against this backdrop, Ms. Garcia first argues that consistency with these Supreme Court cases concerning Article III federal question jurisdiction would counsel

adoption of a standard under which non-frivolous allegations also establish the Board's jurisdiction. Secondly, Ms. Garcia, citing to Dabney, a Civil Service Commission case that preceded the CSRA, submits that Congress intended a non-frivolous allegation standard to establish the Board's jurisdiction and entitle the employee to a hearing on the merits. See Dabney v. Freeman, 358 F.2d 533, 536 (D.C. Cir. 1965). Ms. Garcia argues that, when considered in the proper historical context of the Dabney case, § 7701 clearly incorporates a non-frivolous allegation standard for establishing the Board's jurisdiction.

The Board presses a similar argument for its conclusion, shared by Ms. Garcia, that the correct standard for jurisdiction is described in Spruill. Accordingly, the Board has stated that in cases where the jurisdictional issues and the merits are intertwined, then, but for being bound by the Cruz decision, it would follow the Spruill approach. In its statement of interest in its amicus curiae brief, the Board makes its objectives clear. The Board believes that its jurisdiction should attach when an appellant makes non-frivolous allegations supported by some evidence in cases where the merits and jurisdictional issues are intertwined. In particular, it approves of the statements in Bartels that stated that

> [t]he uniform view in federal courts is that in such a situation, where jurisdictional elements and merits elements are intertwined, the court should find that jurisdiction has attached when the requisite non-frivolous allegations are made. . . . As compared to Cruz, the established approach in federal court is more logical, as it does not require the appellant to prove his entire case on the merits in order to invoke the power of the Board to decide his case in the first place.

98 M.S.P.R. at 284. Furthermore, the Board cites approvingly the concurring opinion of Board Chairman McPhie in Lloyd. In that case, Chairman McPhie stated that "[i]f

federal courts find subject matter jurisdiction based on non-frivolous allegations and decide proof issues on the merits, I see no reason why the Board should not also do so." Lloyd, 96 M.S.P.R. at 529.

The line of reasoning outlined above does not persuade us that the statute compels a non-frivolous standard for the Board's jurisdiction. There is nothing in the plain language of the statute requiring or even suggesting a non-frivolous standard. Nor have the parties pointed to anything in the legislative history of the CSRA specifically indicating that Congress intended that, in cases in which jurisdictional issues and merits issues overlap, the Board is required to follow the standards for jurisdiction applicable to Article III courts.

We agree with Ms. Garcia that indeed one of the many canons of statutory interpretation presumes that Congress is understood to legislate against a background of common-law adjudicatory principles. We are not persuaded, however, that this canon controls in this specific instance. First, it is not entirely clear to us that what the Board characterizes as "the uniform view in federal courts" is the type of "well established" common-law principle to which this canon applies. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) (stating that the rules of preclusion are "well established" common-law principles). In the case of threshold jurisdictional questions analogous to the threshold jurisdictional question of whether an employee has been removed from his position within the meaning of 5 U.S.C. § 7512(1), the courts have applied the preponderance test. For example, diversity jurisdiction requires that, as a jurisdictional predicate, the plaintiff allege (and if challenged, prove) that there is diversity among the parties. The proof may follow a jurisdictional hearing and will

04-3442                                    25

require a showing of the elements of diversity by a preponderance of the evidence. The Supreme Court has so held with respect to the amount in controversy issue, McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (stating that "the court may . . . insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence"), and the lower federal courts have so held with respect to the allegation of diversity of citizenship, Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 878 n.16 (5th Cir. 2004); Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974). See also Connolly v. Spielman, 999 F. Supp. 270, 273 (N.D.N.Y. 1998) ("The party invoking the Court's jurisdiction has the burden of proving complete diversity at the time the action was commenced by a preponderance of the evidence.").

Second, and more importantly, inasmuch as the Board is not an Article III court, we fail to see how the backdrop of standards applicable to Article III court jurisdiction suggests that Congress intended those standards to apply to this quasi-judicial administrative agency. In fact, there are suggestions that Congress specifically did not intend concepts from Article III courts to be used by the Board. As the DHS argues in its submission to this court, for example,

> [t]o the extent the legislative history even mentions concepts from the Federal Rules [of Civil Procedure], it does so explicitly to reject their application. See H.R. Rep. No. 95-1717, 95th Cong., 2d Sess. 137 (1978), 1978 U.S.C.C.A.N. 2723, 2871. . . . Congress did explicitly decline to adopt a complementary procedure that would have permitted a summary decision similar to the summary judgment procedure under the Federal Rules.

See also Crispin v. Dep't of Commerce, 732 F.2d 919, 922-23 (Fed. Cir. 1984).

Moreover, Dabney does not support Ms. Garcia's position. In Dabney, the United States Court of Appeals for the District of Columbia Circuit affirmed a decision of the Civil Service Commission dismissing a case for lack of jurisdiction because the claimant failed to produce a "preponderance of credible evidence" that she had suffered an adverse action. Dabney, 358 F.2d at 536. Furthermore, although Dabney does state that "if and when the Commission's relieving authority is invoked by non-frivolous allegations of coercion, the Commission should entertain the appeal and hear and determine the allegations," id. at 535, the mention of a non-frivolous standard only regards the Commission's power to grant a hearing. Closely following this statement, Dabney reaffirms that "[i]f [the allegations of coercion] are not sustained, the appeal is to be dismissed as outside the limits of the Commission's jurisdiction." Id. In other words, under Dabney, non-frivolous claims themselves do not establish jurisdiction; rather, they only entitle the claimant to a hearing where jurisdiction will be decided. If, during or after that hearing, jurisdiction is not established, then the court must dismiss the case for lack of jurisdiction. Id. at 537.

Accordingly, there is nothing in the statute, the legislative history, or applicable case law that compels a non-frivolous standard for the Board's jurisdiction.

**2**

In 5 U.S.C. § 7701, Congress has not "directly spoken" to an employee's burden of proof for establishing the Board's jurisdiction. See Chevron v. Natural Res. Def. Council, 467 U.S. 837, 842 (1984). If Congress has spoken, the court's inquiry is at an end. Kilpatrick v. Principi, 327 F.3d 1375, 1384 (Fed. Cir. 2003). On the other hand, if the statute is silent or ambiguous, then the court must resort to other means of statutory

construction.  Id.  In this case, § 7701 is silent as to the burden of proof required to establish jurisdiction.

The statute, however, is not silent on a related matter.  As the Supreme Court noted in Cornelius v. Nutt, "the [CSRA] provides . . . that the Board 'may prescribe regulations to carry out the purpose of [§ 7701].'"  472 U.S. 648, 657-58 (1985) (reversing this court where it followed an alternate interpretation of § 7701 in lieu of the Board's regulation 5 C.F.R. § 1201.56).  Pursuant to this statutory authority, the Board has promulgated regulations to carry out § 7701.  Under 5 C.F.R. § 1201.56, "[t]he appellant has the burden of proof, by a preponderance of the evidence, with respect to . . . [i]ssues of jurisdiction."  This specific regulation is neither "arbitrary, capricious, or manifestly contrary to the statute," and is therefore entitled to deference and is lawful. See Chevron, 467 U.S. at 844.  The dissent cites a scholarly treatise which states that "[t]he Court has never definitively held . . . that Chevron applies to jurisdictional disputes."  Richard J. Pierce, Administrative Law Treatise § 3.5, at 157 (4th ed. 2002). But that same treatise also states that "[m]ost circuit courts apply Chevron to jurisdictional disputes" and furthermore that "[j]udging by the Court's pattern of decisions, it seems clear that Chevron applies to cases in which an agency adopts a construction of a jurisdictional provision of a statute it administers."  Id.  See also Miss. Power & Light Co. v. Mississippi, 487 U.S. 354, 381 (1988) (Scalia, J. concurring) ("[I]t is settled law that the rule of deference applies even to an agency's interpretation of its own statutory authority or jurisdiction.").  The preponderance standard in the regulation, and especially a preponderance standard for proving involuntariness, is consistent with the statutory framework for adverse actions established by Congress.

04-3442                                                    28

In addition to being consistent with statute, there is no reason to read the regulation in a manner inconsistent with its plain language. Ms. Garcia does not argue that the Board's regulation is invalid; she argues that according to her reading of the statute and the regulation, the two can co-exist because the non-frivolous standard applies before any hearing takes place and the preponderance standard from the regulation applies once there is a hearing on the merits. In short, she interprets the regulation to narrow its applicability. Thus, according to Ms. Garcia, a non-frivolous allegation of constructive removal/demotion establishes the Board's jurisdiction and entitles the employee to a hearing where the merits are decided, while the Board's regulation, 5 C.F.R. § 1201.56(a)(2)(i), controls the burden of proof once the employee reaches a hearing on the merits.

We disagree. There is nothing to suggest that the regulation should be applied any less generally for cases under 5 U.S.C. § 7512 than the plain language of the regulation dictates. Ms. Garcia's effort to reconcile the regulation and her reading of the statute is therefore unavailing. She points to no authority outside of Walley for her position, and we are not persuaded by her reliance on certain language in that opinion. Specifically in Walley, the court described the scope of the Board's regulation as follows:

> Section 1201.56 of the regulations, placing the burden of proof on the employee with respect to "jurisdictional issues," is plainly not concerned with the first issue of technical jurisdiction [the need for a non-frivolous allegation], but rather with the second issue [concerning the ultimate merits]. The consequence is that if a merits issue is one that is also "jurisdictional," the burden of proof on that merits issue remains with the employee even though, as a technical matter, the Board's jurisdiction is established by a non-frivolous allegation. The Board itself has interpreted this regulation as governing the burden of proof on those issues that the Board has viewed as "jurisdictional." Smith v. Dep't of Energy, 89

M.S.P.R. 430, 434 (2001); Giove v. Dep't of Transp., 89 M.S.P.R. 560, 564 (2001); Mobley v. U.S. Postal Serv., 86 M.S.P.R. 161, 164 (2000). We owe deference to the Board's interpretation.

279 F.3d at 1019. The three Board cases cited in Walley certainly do not support Ms. Garcia's position nor, for that matter, do they compel this court's interpretation of the regulation in Walley. Indeed, we find that these cases all support a view of the regulation opposite to that proposed by Ms. Garcia. In Smith v. Department of Energy, the Board held that

> [t]he appellant has the burden of proving Board jurisdiction over his appeal. He is only entitled to a jurisdictional hearing if he makes a non-frivolous allegation that the Board has jurisdiction over his appeal. A non-frivolous allegation of jurisdiction is an allegation of fact which, if proven, could establish a prima facie case that the Board has jurisdiction in the matter.

89 M.S.P.R. at 434. Similarly, in Giove v. Department of Transportation, the Board held that

> [t]he existence of Board jurisdiction is a threshold issue in adjudicating an appeal, and the appellant bears the burden of establishing jurisdiction by a preponderance of the evidence. The issue of Board jurisdiction is always before the Board and may be raised by either party or sua sponte by the Board at any time during a Board proceeding.

89 M.S.P.R. at 564. Lastly, we also find no support for the cited proposition in Mobley v. United States Postal Service, where the Board approvingly cites its regulation and holds that "[t]he appellant has the burden of proof to establish the Board's jurisdiction over his appeal." 86 M.S.P.R. at 165.

Furthermore, this court's view in Walley and Ms. Garcia's proposed reading of the regulation are inconsistent with our earlier en banc opinion in Cruz. As we stated there, "[l]ack of jurisdiction is lack of jurisdiction." Cruz, 934 F.2d at 1246. In other words, there is no part of jurisdiction that could be considered "technical" as if part of

jurisdiction is only a technical concern without substantive impact. Jurisdiction is always a substantive concern, and if at any time a court determines that it lacks jurisdiction, it cannot decide the merits of the case. Rather, the court is limited to dismissing or transferring the case. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988).

In addition, Ms. Garcia's reading of the regulation is inconsistent with its plain meaning. The regulation is not directed at the burden of proof on the merits once jurisdiction has been established. As discussed above, the regulation clearly requires that the claimant establish jurisdiction by a preponderance of the evidence, independent of whether facts relevant to deciding the merits overlap with the facts relevant to deciding jurisdiction. Accordingly, to the extent that our decision in Walley suggests interpreting the Board's regulation to apply a preponderance standard only after jurisdiction has attached, we reject that suggestion.

**3**

Although the Board argues that its current regulation should be afforded deference, it appears that the Board's principal reason for not changing its own regulation is its belief that Cruz prevents it from doing so. Its position is outlined in detail in the majority opinion in Bartels and in the concurring opinion in Lloyd. See Bartels, 98 M.S.P.R. at 283-85; Lloyd, 96 M.S.P.R. at 522-23. In his concurring opinion in Lloyd, Chairman McPhie recites various legal and policy arguments that advocate for the non-frivolous standard. He argues that allowing jurisdiction to be determined by a non-frivolous allegation would make it easier for discrimination claims to be heard on the merits by the Board. According to the Chairman, claimants would thus "at least

have the satisfaction of knowing that the Board examined their claims on the merits, rather than dismissing them on jurisdictional grounds." Id. at 530. In his view, the goal of having the Board decide these discrimination claims outweighs certain other potential drawbacks:

> Finally, some may argue that finding subject matter jurisdiction based on non-frivolous allegations of jurisdiction would substantially increase the number of constructive removal appeals that are filed with the Board and require more lengthy decisions. So be it. The Board's authority and obligation to review appellants' claims should not be determined by considerations of convenience and workload. Such an outcome would be offensive to the principles of justice.

Id. And the Chairman concludes by reiterating that, in his view, "the Cruz approach to determining jurisdiction over constructive removals is unfair, illogical, and inconsistent with other courts." Id.

In sharp contrast, the DHS argues for the preponderance standard based on institutional concerns. Noting the potential to substantially increase the Board's ability to hear "mixed-cases," the DHS argues that the preponderance standard ensures the primacy of the EEOC in addressing discrimination complaints and also that claims involving a particular adverse agency action are not arbitrarily and inefficiently bifurcated between the MSPB and the EEOC process. The DHS also argues that even outside of mixed-cases, the preponderance of the evidence standard prevents the Board from "expend[ing] its limited resources in conducting evidentiary hearings even when an appellant fails to make a substantial claim."

We find the various rationales advocated by the Board unpersuasive. First, we do not view the Cruz standard to be illogical. In a constructive action case, the jurisdictional fact at issue is almost always whether the facially voluntary action was

involuntary. Involuntariness is essential for jurisdiction and it must be proven by the claimant. But while jurisdiction is established under 5 U.S.C. § 7512, the merits of the case are determined by the agency's compliance with § 7513(a)-(b). In other words, the jurisdictional determination is not identical to the merits determination. Cf. Rusin v. Dep't of Treasury, 92 M.S.P.R 298, 303 (2002) (noting in the context of the IRA that there is a near complete overlap between the merits and the jurisdictional determinations: "the making of such [non-frivolous] allegations [for IRA claims] establishes the Board's jurisdiction to adjudicate the appellant's claim on the merits. To prevail on the merits, the appellant is then required to prove these elements by preponderant evidence."). Furthermore, in mixed constructive adverse action cases, there are additional differences between the jurisdictional issues and the merits of the discrimination claim. As stated by the administrative judge in this case,

> evidence of discrimination goes to the ultimate question of coercion, i.e., whether under all of the circumstances working conditions were made so difficult by the agency, that a reasonable person in the employee's position would have felt compelled to request a reduction in grade. Once the Board's jurisdiction has been established in a constructive demotion appeal, issues of discrimination and reprisal may be adjudicated under the standards applicable for proof of discrimination and/or retaliation under Title VII as the case is then a mixed case.

Initial Decision, slip op. at 3 (citing Markon v. Dep't of State, 71 M.S.P.R. 574, 578 (1996)). Thus, in a mixed constructive adverse action case, jurisdiction is determined by 5 U.S.C. § 7512 and the legal standards applicable to establishing involuntariness. Discrimination issues may be considered insofar as they illuminate involuntariness. In contrast, the merits of the discrimination claim are determined by the applicable anti-discrimination statute.

In these cases, undoubtedly, facts relevant to jurisdiction may also be relevant when deciding the merits. We fail to see, however, how this circumstance makes the current approach illogical. As a practical matter, there need not be any duplicative effort. If a fact determined for jurisdiction is later relevant for the merits determination, there is no reason why that previous finding cannot easily be applied to the merits determination. See also Markon, 71 M.S.P.R. at 580 (noting that "if the appellant establishes that she has been constructively discharged, much of the same evidence of discrimination or retaliation relied upon to establish coercion may also be relevant to proof of discrimination and retaliation under Title VII and/or the WPA"). Importantly, as noted, in mixed cases the discrimination claim itself is adjudicated using the elements, burdens, and defenses specific to the underlying discrimination statute.

Second, we disagree that the present procedure is unfair. The Board contemplates a scenario where non-frivolous allegations allow the Board's jurisdiction to attach and the Board, therefore, is granted the power to decide the underlying discrimination case. The Board feels that "principles of justice" demand that, independent of "considerations of convenience and workload," the Board should be able to address these discrimination claims on the merits. We fail to see how allowing the Board to hear the discrimination claims after a claimant makes non-frivolous jurisdictional claims is the only way to achieve these ends. Indeed, the very case that is being relied upon for the non-frivolous standard expresses similar concerns about expanding the scope of the Board's jurisdiction in the discrimination arena. As this court stated in Spruill:

> At [the time the CSRA was passed] the issue of discrimination was a known and abhorred evil that had long been of concern to Congress.

Years before, Congress passed the Civil Rights Act of 1964 to combat discrimination. That Act set up the EEOC, and established procedures to encourage the disclosure of discriminatory practices. Upon passage of the CSRA, enforcement and related functions regarding discrimination in Federal employment were placed with the EEOC. This executive action "place[d] the Commission at the center of equal employment opportunity enforcement . . . [giving] coherence and direction to the government's efforts by developing strong uniform enforcement standards to apply throughout the government: standardized data collection procedures, joint training programs, programs to ensure the sharing of enforcement related data among agencies, and methods and priorities for complaint and compliance reviews."

. . . .

There is good reason for Congress to have structured the act in the manner it did. . . . It acknowledges the EEOC's role as an expert agency in discrimination matters, facilitates EEOC consolidation of important statistical data, and provides an efficient division of decision making labor. In short, it promotes efficiency and economy. Our conclusion today reinforces Congress' efforts to provide the MSPB with a workload that is within its resources and to provide the EEOC with a continuing leadership role in the ongoing battle to eradicate discrimination.

978 F.2d at 691-92 (citations omitted) (quoting Reorganization Plan No. 1 of 1978, 43 F.R. 19807, 92 Stat. 378 (message of the President) (reprinted in 42 U.S.C.A. § 2000e-4, note (West 1981 & Supp.1992))). Similarly, we note that the dissent's concerns that "[t]he majority eliminates the statutorily prescribed role of the EEOC and the district courts in the adjudication of the merits of the discrimination claims in constructive action cases" were considered and laid to rest in Cruz. Where there is a bona fide constructive action, the Board can certainly hear the discrimination claims. On the other hand, as we noted in Cruz, where the Board finds that there was not a constructive action,

an appeal from the Board may not be the only route for presentation of Cruz' reprisal "Title VII" claim, a claim that would appear to fall within the subject matter jurisdiction of fora other than the Board. First, the district court has subject matter jurisdiction over Title VII claims. If Cruz believes he has been the victim of discriminatory acts violative of Title VII, he may file a complaint and obtain a de novo trial in the district court under 42

U.S.C. § 2000e-5(f)(3). Further, if Cruz filed a complaint with the EEOC and the EEOC dismissed his complaint because he was presenting the same issues to a court, the EEOC may reopen its proceedings on that complaint after the Board has dismissed his appeal for lack of jurisdiction. Lastly, Cruz may submit his reprisal claim to the Office of Special Counsel which may, if warranted, take full remedial action.

Cruz, 934 F.2d at 1247-48 (citations omitted).

Accordingly, we see no reason to overrule Cruz. Cruz correctly articulated that "[t]he Board has not been granted jurisdiction over Title VII claims per se, i.e., over 'pure' or 'naked' Title VII claims unaccompanied by an appealable action over which the Board does have jurisdiction." Cruz, 934 F.2d at 1245. Similarly, we see no reason to disturb the analysis in Cruz that rejected the notion that the Board "may, after learning [that] a fact 'necessary to its principal jurisdiction' is absent, go on to decide issues within its pendent or ancillary jurisdiction." Id. at 1249. Cruz is consistent with both the Board's regulation and with the overall statutory scheme for adverse actions.

Based on our reaffirming of Cruz, we also conclude that certain language in Dick is at odds with Cruz. In Dick, this court stated that "[t]he Board has jurisdiction over an appeal [alleging a constructive demotion] if the government employee makes non-frivolous allegations of jurisdiction supported by affidavits or other evidence." Dick, 290 F.3d at 1361. Accordingly, we overrule Dick and Dorrall to the extent that they are inconsistent with Cruz.

As noted above, the Board has also explicitly suggested that it would adopt the standard in Spruill but feels it cannot do so because of this court's en banc decision in Cruz. Thus, while arguing that this court should defer to the current regulation, the Board also urges this court to defer to any future regulation that adopts a non-frivolous standard for jurisdiction. We decline that invitation for several reasons.

04-3442                                    36

This court does not provide advisory opinions on hypothetical regulations; we decide actual cases or controversies. The Board has an existing regulation, and if the Board has a sufficient basis on which to change that regulation, it must do so in accordance with the Board's notice and comment rulemaking procedures. As described recently in Tunik v. Merit Systems Protection Board:

> [Because the regulation at issue] is a substantive rule not subject to the exemption in section 553(b)(A) and because it is not subject to the agency management or personnel exception of section 553(a)(2), the Board could only repeal the rule through the notice and comment procedures required by section 553(b). United States v. Nixon, 418 U.S. 683, 695-96 (1974) ("So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it."); Am. Fed'n of Gov't Employees, AFL–CIO, Local 3090 v. Fed. Labor Relations Auth., 777 F.2d 751, 758-60 (D.C. Cir. 1985) ("[U]nless and until it amends or repeals a valid legislative rule or regulation, an agency is bound by such a rule or regulation."); see also United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267-68 (1954) (holding that the Attorney General may not act in contravention of valid regulations "as long as the regulations remain operative").

407 F.3d 1326, 1345 (Fed. Cir. 2005).

Finally, while the current regulation is entitled to deference, as this court noted in Tunik,

> where an earlier panel decision on statutory construction was based on deference to an agency interpretation, a later panel of this court is free to consider whether a new agency interpretation is reasonable without en banc reconsideration of the earlier panel decision [even though] . . . panels of the court are bound by prior panel decisions. . . . [A] panel should be free to consider whether the new interpretation is permissible in keeping with our role as a reviewing court under the Chevron framework.

407 F.3d at 1338. Cruz was not a case in which an agency promulgated regulation was being challenged. Thus, independent of any statement in Cruz, our procedure is clear: when faced with an actual case or controversy that includes a challenge to an agency

regulation, this court will address the validity of that regulation by the procedures and standards set forth in Chevron and its progeny.

## V

To summarize, under 5 U.S.C. §§ 7701 and 7512, once a claimant makes non-frivolous claims of Board jurisdiction, namely claims that, if proven, establish the Board's jurisdiction, then the claimant has a right to a hearing. At the hearing, the claimant must prove jurisdiction by a preponderance of the evidence. If the Board determines that the claimant fails to prove jurisdiction by a preponderance of the evidence, then the Board does not have jurisdiction and the case is dismissed for lack of jurisdiction.

## A

In this case, the administrative judge's recitation of the applicable standards regarding jurisdiction appears to be correct. She correctly noted that pursuant to 5 C.F.R. § 1201.56(a)(2) "[t]he appellant has the burden of proving by preponderant evidence that her appeal is within the Board's jurisdiction." Initial Decision, slip op. at 1. She also correctly stated the elements necessary to establish involuntariness. Furthermore, she correctly stated that "non-frivolous allegation[s] of jurisdiction entitl[e] [a claimant] to a hearing." Id., slip op. at 3. Yet, the administrative judge's decision is deficient for three reasons.

First, there is a lack of clarity as to what standard was ultimately applied to Ms. Garcia's case and a lack of specificity as to how the decision was reached. While the administrative judge did not grant a hearing on the question of jurisdiction, she never explicitly stated that Ms. Garcia presented frivolous claims. Indeed, in her opinion, the administrative judge found "that the appellant has not met her burden to prove that her

reduction in grade was involuntary," which arguably suggests that instead a preponderance of evidence standard was being applied.

Second, if indeed the administrative judge decided that Ms. Garcia's allegations were frivolous, this court requires that the Board further elaborate on its decision by providing some specificity. A denial of a request for a hearing would be proper where the claimant has failed to make allegations that, if proven, could satisfy one or more of the elements necessary to establish Board jurisdiction. If that is the conclusion reached by the administrative judge here, it is incumbent upon her to explain the basis for that decision.

Third, and lastly, some of the administrative judge's reasoning appears misplaced. The administrative judge held that

> [t]he appellant appears to allege that she was forced to request a reduction in grade when she returned to the office on January 2, 2003, as required, and found that the renovations had not begun and were unfunded. . . . In any event, the information appellant received in January did not cause her to request a reduction in grade because she applied for the position that resulted in her reduction in grade on October 18, 2002.

Id., slip op. at 6. The administrative judge determined that there could be no causal relationship between the unfunded renovation and her alleged involuntary reduction in grade because Ms. Garcia learned of the unfunded renovation after she had already applied for the job in Miami. The analysis appears to ignore, however, that Ms. Garcia did not accept the position in Miami until after learning that the renovation was deemed unfunded. Without more explanation, it would appear that simply applying for (as opposed to actually accepting) a position could have been nothing more than prudent contingency planning by Ms. Garcia. We therefore question the weight that the

04-3442                                    39

administrative judge gave this factor, especially because the administrative judge labeled the chronology of these events as "the most probative evidence."  Id.

**B**

Because the Board did not adequately determine whether or not Ms. Garcia had presented non-frivolous allegations while denying Ms. Garcia a hearing, we find that the administrative judge obtained her decision without procedures required by law.  We vacate the Board's dismissal and remand the case to the Board for further consideration of the issue of non-frivolousness of Ms. Garcia's claim consistent with this opinion.

**COSTS**

No costs.

<u>VACATED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

04-3442

LOURDES M. GARCIA,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

DYK, <u>Circuit Judge</u>, dissenting, with whom NEWMAN, <u>Circuit Judge</u>, joins.

Today this court overrules this court's decisions holding that the Board must apply a non-frivolous allegation standard for jurisdiction in constructive adverse action cases alleging unlawful discrimination.[1] In my view, the majority decision reflects a profound misunderstanding of the statutory scheme.

The effect of today's decision is that in a constructive adverse action case questions of the agency's compliance with the Rehabilitation Act, 29 U.S.C. § 791, or any other federal anti-discrimination statutes will be determined by the Board in a "jurisdictional" hearing, with the appeal from an adverse Board decision coming to this court. That result is directly contrary to 5 U.S.C. § 7702, which requires that the merits of discrimination claims be resolved under the Board's section 7702 pendent jurisdiction, with quite different appeal procedures thereafter, designed to protect the

---

[1] See, e.g., <u>Dorrall v. Dep't of the Army</u>, 301 F.3d 1375, 1380 (Fed. Cir. 2002); <u>Stephens v. Dep't of Agric.</u>, No. 05-3270, Slip op. at 2 (Fed. Cir. 2005); <u>Colbath v. Dep't of Army</u>, 89 Fed. Appx. 727, 730 (Fed. Cir. 2004).

rights of federal employees alleging discrimination. In constructive adverse action cases, cases which represent an important aspect of Board jurisdiction, the court has read those protections out of the statute. The majority has, moreover, declined to interpret the statutory grant of Board jurisdiction in accordance with the traditional well-pleaded complaint rule that applies when the merits and jurisdictional issues overlap -- a rule that the majority inexplicably continues to approve in other areas of Board jurisdiction. I respectfully dissent.

I

Section 7701 confers jurisdiction on the Board over adverse action claims (removals, suspensions for more than 14 days, reductions in grade or pay, and furloughs for 30 days or less). 5 U.S.C. §§ 7512, 7701(a) (2000). The purpose of section 7702 is to allow federal employees to litigate statutory antidiscrimination claims (involving adverse actions) before the Board with the right of appeal thereafter to the Equal Employment Opportunity Commission ("EEOC") and the district courts. The Rehabilitation Act is one of these statutes. See 5 U.S.C. § 7702(a); 29 U.S.C. 791 (2000). The Supreme Court has recently made clear that constructive discharges based on discrimination are prohibited by the antidiscrimination laws. Pennsylvania State Police v. Suders, 542 U.S. 129 (2004). The same is true of constructive demotions, the adverse action alleged here.[2]

---

[2] See Fenney v. Dakota, Minnesota & Eastern R. Co., 327 F.3d 707, 717-18 (8th Cir. 2003); Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 876 (7th Cir.1999); Sharp v. City of Houston, 164 F.3d 923, 933-34 (5th Cir.1999); cf. Diaz-Gandia v. Dapena-Thompson, 90 F.3d 609, 614 (1st Cir.1996) (recognizing "constructive demotion" in a veteran's rights discrimination case).

In this case the petitioner explicitly bases her constructive demotion claim on the Rehabilitation Act. [3] In her appeal to the Board, Garcia alleged that her employer discriminated against her based on "disability." (J.A. at 58.) Before the Board, the agency argued that "appellant was not entitled to reasonable accommodation because she has not established that she was disabled under the Rehabilitation Act." (J.A. at 5.) In this court she continues to argue that the agency failed to "meet the standards of the Rehabilitation Act." Pet. Reply Br. at 3-4; see also Pet. Br. at 6. The majority acknowledges that Garcia alleges "refusal to provide a reasonable accommodation for her injured shoulder and back as required by § 501 of the Rehabilitation Act." Maj. Op. at 5. The majority agrees that the petitioner has, or may have, asserted non-frivolous allegations of Rehabilitation Act discrimination. Maj. Op. at 37-38. The question is whether as a result the Board has jurisdiction over this discrimination claim related to the adverse action.[4] The majority holds that the Board has no jurisdiction until the petitioner proves her discrimination claim by a preponderance of the evidence. In my view the majority's rule significantly undermines the congressional purpose.

II

At the time of the enactment of sections 7701 and 7702, Congress carefully crafted procedures for the adjudication of the merits of discrimination claims before the

---

[3]   She also alleged race, national origin and sex discrimination. Those discrimination claims are not pursued in this appeal.

[4]   The majority opinion appears to suggest that the Board has jurisdiction under section 7702 over claims unrelated to the constructive adverse action claims. Maj. Op. at 22. But Board jurisdiction under section 7702 does not extend that far. Under sections 7701 and 7702 the Board can only address adverse action claims and claims relating to discrimination on which those adverse actions were based. 5 U.S.C. 7702(a)(1) ("in the case of any employee . . . who – (A) has been affected by an [appealable action] . . . and (B) alleges that a basis for the action was discrimination . . . the Board shall decide both [issues] . . . .").

Board, that is, in situations where the adverse action was claimed to be the result of discrimination in violation of federal law, including the Rehabilitation Act (29 U.S.C. § 791), the Age Discrimination in Employment Act (29 U.S.C. § 631), the Fair Labor Standards Act (29 U.S.C. § 206(d)), and Title VII of the Civil Rights Act (42 U.S.C. § 2000e-16). Those procedures are laid out in 7702.

Section 7702(a)(1) provides:

the Board shall, within 120 days of the filing of the [adverse action] appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 . . . .

5 U.S.C. § 7702(a)(1). Section 7702(b) guarantees an employee the right to EEOC and district court review of an adverse Board decision on such discrimination claims.[5]

Thus, an employee who loses on the merits of the employee's pendant discrimination

---

[5] Under section 7702(b), once the Board issues an initial decision and the initial decision becomes final, the employee can file a petition for review with the EEOC. 5 U.S.C. §§ 7702(b), 7702(e). If the employee seeks review before the EEOC, the EEOC can either concur in the Board's final decision or issue a new final decision. See 5 U.S.C. § 7702(b). In making this determination, the EEOC "consider[s] the entire record of the proceedings of the Board." It may issue a new decision if the Board decision "is not supported by the evidence in the record as a whole," or "constitutes an incorrect interpretation of [the discrimination statutes specified in (a)(1)(B)]." 5 U.S.C. § 7702(b)(3). "In considering [the] decision of the Board . . . the Commission may refer the case to the Board, or provide on its own, for the taking . . . of additional evidence . . . ." 5 U.S.C. § 7702(b)(4).

If the EEOC concurs in the Board's final decision, the Board decision becomes judicially reviewable in federal district court, and the Board has no further jurisdiction to review the matter. 5 U.S.C. § 7702(b)(5)(A); see Williams v. United States Postal Serv., 967 F.2d 577, 579 (Fed. Cir. 1992). On the other hand, if the EEOC issues its own decision, then the Board must consider that decision and either adopt it or reaffirm its prior decision, with modifications if necessary. If the Board does not adopt the EEOC decision, a "special panel" then considers and decides the case. 5 U.S.C. § 7702(d)(1)-(2). The special panel is composed of one Board member, one EEOC member, and a Chairman appointed by the president with the advice and consent of the Senate. 5 U.S.C. § 7702(d)(6).

claim can appeal the Board's decision to the EEOC and thereafter to the district court. These procedural rights were viewed as critical.

The role of the EEOC in this process was a central focus. Before the enactment of the 1978 legislation which created the MSPB and sections 7701 and 7702, the EEOC played no role in the enforcement of antidiscrimination laws in the federal workplace. Reorganization Plan No. 1 of 1978, 43 F.R. 19807, 92 Stat. 378 (message of the President) (reprinted in 42 U.S.C.A. § 2000e-4, note (West 1981 & Supp.1992)). This was seen as unsatisfactory, and a proposed Presidential reorganization plan transferred to the EEOC the entire responsibility for enforcement of the antidiscrimination laws in the federal workforce. Id. Ultimately, through the enactment of section 7702, this responsibility was shared between the EEOC and the Board. Section 7702 "provide[s] for an active role in the process by the [EEOC] where questions of discrimination are involved," and "preserves an important policy role for the EEOC which it may invoke, consistent with the requirements of law, regardless of the outcome of a particular case." S. Rep. No. 95-969, 95th Cong., 2d Sess. 137 (1978), 1978 U.S.C.C.A.N. 2723, 2775 ("Senate Report"); H.R. Rep. No. 95-1717, 95th Cong., 2d Sess. 137 (1978), 1978 U.S.C.C.A.N. 2860, 2873 ("House Report"). This is achieved by providing for appeals to the EEOC from adverse Board decisions on discrimination claims.

The legislative history of the 1978 Act and prior decisions of this court have likewise confirmed the importance of the district courts in this process. The district courts review the decision of the Board if the EEOC agrees with the Board's rejection of the discrimination claim. The Senate Report made clear that

> District Court is a more appropriate place than the Court of Appeals for these cases since they may involve additional fact-finding. Furthermore,

discrimination complaints involving employees outside the Federal government are now considered by U.S. District Courts. To encourage uniformity in judicial decisions in this area both kinds of cases should continue to be considered by the U.S. District Court.

Senate Report at 2785; King v. Lynch, 21 F.3d 1084, 1089 (Fed. Cir. 1994); Wiggins v. United States Postal Serv., 653 F.2d 219, 221 (1981); see also Williams v. Dep't of Army, 715 F.2d 1485, 1488-90 (Fed. Cir. 1983) ("From the standpoint of judicial economy, consideration of all issues by a single tribunal is clearly preferable.").[6]

The majority eliminates the statutorily prescribed role of the EEOC and the district courts in the adjudication of the merits of discrimination claims in constructive action cases. To be sure the review mechanism of 7702, including the EEOC and district courts, is not triggered in adverse action cases unless the Board initially has jurisdiction. Cruz v. Dep't of the Navy, 934 F.2d 1240, 1246 (Fed. Cir. 1991) (en banc). Typically the question of whether there has been an adverse action (e.g., a removal) is not in dispute and, even if disputed, is almost entirely separate from the merits of the discrimination claim. If necessary, the Board appropriately conducts a jurisdictional hearing to determine whether there has been an adverse action (for example whether there has been a removal), with the petitioner's bearing the burden of proof to establish jurisdiction by a preponderance of the evidence. If the Board determines that there has been an adverse action (e.g., a removal), the Board can then consider under section 7702 whether the adverse action was the result of discrimination. If the Board rejects

---

[6] Under the 1978 statute, this court can review the merits of a mixed case only if the petitioner waives his discrimination claims. The court can review the Board's dismissal of a discrimination claim for want of jurisdiction. See, e.g., Austin v. Merit Systems Protection Bd. 136 F.3d 782, 784 (Fed. Cir. 1998); King v. Lynch, 21 F.3d 1084, 1089 (Fed.Cir.1994); Ballentine v. Merit Sys. Protection Bd., 738 F.2d 1244, 1247-48 (Fed.Cir.1984).

the discrimination claim on the merits, the mixed case review procedure of section 7702 is triggered.

Constructive adverse action cases involving discrimination are, however, different. In those cases, the merits of the discrimination claim and the question whether there has been an adverse action substantially overlap. Nonetheless, under the majority's view, the petitioner must establish the existence of discrimination by a preponderance of the evidence before the Board has jurisdiction. The consequence is that the Board never has jurisdiction unless the petitioner prevails on the merits. If the petitioner fails on the merits, the Board has no jurisdiction, the mixed case procedures are never triggered, the EEOC has no role to play, and this court, rather than the district court, reviews the Board's dismissal.

Even if a Board determination that it lacked jurisdiction because of a failure to prove discrimination by a "preponderance of the evidence" would not preclude the employee from initiating a new proceeding before the EEOC challenging the constructive adverse action, the statutory purpose is still undermined in significant ways. The employee would be compelled to initiate, and the agency to participate in, a second, original proceeding before the EEOC that would require the assembling of a record; Board participation would be eliminated, and the stringent time limits imposed by section 7702 would not govern. Allowing adverse action cases to proceed before the EEOC without Board involvement would hinder the congressional purpose of creating a "single, unified personnel policy which [takes] into account the requirements of all the various laws and goals governing Federal personnel management." Senate Report at 2775. Congress also made clear that the mandatory time limits "impose[ ] a statutory

requirement that [eliminates] the delays that have been experienced in the past in processing discrimination complaints . . . ." House Report at 2874.

The majority's perplexing construction of the statute simply makes no sense in terms of the statutory purpose, as the Board itself has recognized. See Bartels v. U.S. Postal Serv., 98 M.S.P.R. 280, 284 (2005) ("[T]he established approach in federal court is more logical [and] better reflects the reality of the way the Board adjudicates a case in which the appellant claims that the agency's actions were motivated by prohibited discrimination."); see also Lloyd v. Small Bus. Admin., 96 M.S.P.R. 518, 526-530 (2004) (concurring opinion of Chairman McPhie).

III

Our prior decisions have adopted an alternative construction of the jurisdictional provisions of section 7701 that avoids this conflict with section 7702 and preserves the statutory right to mixed case procedures.[7] That construction recognizes that the Board has jurisdiction in constructive adverse action cases if the employee has made non-frivolous allegations of discrimination. Under this interpretation, the Board has section 7702 jurisdiction when resolving the discrimination issues, and the procedural protections of the statute remain in place.

The majority rejects this interpretation. The opinion, on the one hand, may be read as holding that under our earlier en banc decision in Cruz, the statute must be read as compelling a preponderance standard.[8] On the other hand the majority may hold

---

[7] See, e.g., Dorrall, 301 F.3d at 1380.

[8] "Furthermore, this court in Cruz held that a non-frivolous allegation only entitles the employee to a hearing where he or she will have the opportunity to prove the existence of an adverse action within the Board's jurisdiction by proving his or her claim of constructive removal/demotion." Maj. Op. at 16.

that the statute is ambiguous and, under <u>Chevron</u>,[9] the court should defer to a Board regulation, 5 C.F.R. § 1201.56(a)(2), which generally establishes a preponderance standard for Board jurisdiction (although not dealing specifically with constructive adverse action cases). Whether based on an independent construction of the statute or on <u>Chevron</u>, in my view the majority has reached the wrong result. Even assuming that the majority's opinion is based on <u>Chevron</u> and that this general regulation should be viewed as applicable to constructive actions, "deference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." <u>Gen. Dynamics Land Sys. v. Cline</u>, 540 U.S. 581, 600 (2004).[10]

A traditional approach to statutory construction requires a quite different result. Statutes must be construed in accordance with their statutory purpose. As the Supreme Court has recently held, when the text of a statute is ambiguous, "we must look beyond the bare text of [the statute] to the context in which it was enacted and the purposes it was designed to accomplish." <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 377 (2004).[11] We too have held that where there is "ambiguity in the statutory language,"

---

[9] <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984).

[10] <u>I.N.S. v. Cardoza-Fonseca</u>, 480 U.S. 421, 448 (1981) ("'If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.'") (quoting <u>Chevron U.S.A. Inc.</u>, 467 U.S. at 843 n.9 (1984)); <u>Delverde, SrL v. United States</u>, 202 F.3d 1360, 1363 (Fed. Cir. 2000) (traditional tools of statutory construction, for <u>Chevron</u> purposes, include "the statute's text, structure, and legislative history, and . . . the relevant canons of interpretation").

[11] <u>See also, e.g.</u>, <u>Johnson v. United States</u>, 529 U.S. 694, 710 n. 10 (2000) ("Our obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result."); <u>Holloway v. United States</u>, 526 U.S. 1, 9 (1999) (noting that "statutory language should be interpreted consonant with 'the provisions of the whole law, and . . . its object and policy'") (quoting <u>John Hancock Mut.</u>

04-3442                                        9

we must "look beyond the statutory language to [legislative history and] the statute's purpose to determine its meaning." Candle Corp. of Am. v. U.S. Intern. Trade Com'n, 374 F.3d 1087, 1093-94 (Fed. Cir. 2004) (citing Jones, 541 U.S. at 377).[12]  Moreover, the Supreme Court has instructed us that Chevron deference should not lightly be afforded to an agency disclaimer of jurisdiction that would work a "fundamental revision of the statute." MCI Telecomms. Corp. v. Am. Telephone & Telegraph Co., 512 U.S. 218, 231-32 (1994).[13]

Where, as here, the agency's jurisdictional determination would conflict with a core congressional purpose, the statute must be interpreted to deny the agency authority to either expand or contract its jurisdiction. See FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 161 (2000); MCI, 512 U.S. at 229-31; see also Crowell v. Benson, 285 U.S. 22 (1932) (requiring de novo judicial review of agency determinations of jurisdictional fact).  As discussed at length above, the purpose of section 7702 can only be preserved by use of a non-frivolous allegation standard for jurisdiction.

---

Life Ins. Co. v. Harris Trust and Sav. Bank, 510 U.S. 86, 94-95 (1993)); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 608 (1979) ("As in all cases of statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve.").

[12]  See also, e.g., Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1355 (Fed.Cir.2003) ("When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature.") (quoting Kokoszka v. Belford, 417 U.S. 642, 650 (1974)).

[13]  It appears that "[t]he Court has never definitively held . . . that Chevron applies to jurisdictional disputes." Richard J. Pierce, Administrative Law Treatise § 3.5, at 157 (4th ed. 2002); see also Mississippi Power & Light Co. v. Mississippi, 487 U.S. 357, 386-87 (1988) (Brennan, J., dissenting) (Justices Brennan, Marshal, and Blackmun urge that Chevron does not apply to jurisdictional disputes).

Another canon of construction compels the same result.  The majority does not dispute that Congress conferred "jurisdiction" on the Board to adjudicate adverse action and other appeals, 5 U.S.C. § 1204(a)(1) ("The [MSPB] shall . . . adjudicate . . . all matters within [its] jurisdiction").  Nor does the majority dispute that in federal court the non-frivolous allegation standard for jurisdiction is well established where the issue of jurisdiction and merits overlap.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998); Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 203 n.19 (1974); Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 249 (1951); Bell v. Hood, 327 U.S. 678, 681-82 (1946); Land v. Dollar, 330 U.S. 731, 734-35 (1946); The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913).  The majority itself appears to agree that in overlap situations where the cause of action is not established a "dismissal of the case would be on the merits, not for want of jurisdiction."  Bell, 327 U.S. at 682.

Given this established federal rule, as the Board itself has urged, see Bartels, 98 M.S.P.R. at 283-85; see also Lloyd, 96 M.S.P.R. at 526-530 (Chairman McPhie, concurring), the non-frivolous allegation standard for Board jurisdiction is compelled by the rule of statutory construction that absent an indication of contrary intent, Congress is understood to legislate against the backdrop of well-established legal principles.  As the Supreme Court has held, "where a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply."  Astoria Fed. Savs. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991).[14]

---

[14]     See also MidAtlantic Nat'l Bank v. N.J. Dep't Envtl. Prot., 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that

The majority appears to reject this approach for three reasons. First, it states, without elaboration, that "it is not entirely clear . . . that [this approach to jurisdiction] is the type of 'well established' common-law principle to which this canon applies." Maj. Op. at 25. But the majority does not provide any reason to treat federal jurisdictional principles differently than other well-established principles. For example, the Supreme Court has only recently interpreted the term "arising under" in a limitations provision to have the same meaning as in federal "statutes governing the scope of federal subject-matter jurisdiction." Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004). The Court emphasized that courts "should avoid reading [the statute] in such a way as to give the familiar statutory language a meaning foreign to every other context in which it is used." Id.

This principle has been applied directly in determining the meaning of the very rule involved here – the well pleaded complaint rule for subject matter jurisdiction, and the Supreme Court in that case reversed our contrary interpretation. In Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc. 535 U.S. 826 (2002), the Supreme Court confronted the scope of 28 U.S.C. §§ 1295(a)(1) and 1338(a), which define this court's jurisdiction over patent appeals. Section 1295(a)(1) confers jurisdiction over appeals from district courts when the district court's jurisdiction is based on section 1338. Section 1338(a), in turn, confers jurisdiction on district courts over civil actions "arising under" the patent laws. Id. at 829. In Holmes Group, the court concluded that a civil

intent specific."); Cannon v. Univ. of Chi., 441 U.S. 677, 696-98 (1979) (construing Title IX to provide a private remedy because several cases had so construed Title VI at the time Title IX was adopted); Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 932 (Fed. Cir. 2000) (construing "reasonable attorney fees" in the Back Pay Act against the backdrop of cases construing other fee-shifting statutes that were in effect when the CSRA was enacted).

action "arises under" the patent laws when the patent-law claim appears on the face of the plaintiff's well-pleaded complaint. The court held that "[b]y limiting the Federal Circuit's jurisdiction to cases in which district courts would have jurisdiction under § 1338, Congress referred to a well-established body of law that requires courts to consider whether a patent-law claim appears on the face of the plaintiff's well-pleaded complaint." Id. at 834 (emphasis added). We have likewise applied the rule to jurisdictional provisions.[15]

Second, the majority urges that the adverse action determination is somehow similar to diversity or amount in controversy determinations where proof by a preponderance is required. Diversity jurisdiction is a quintessential example of a situation in which the jurisdictional issue is separate from the merits, see, e.g., Pratt Central Park Ltd. Partnership v. Dames & Moore, Inc., 60 F.3d 350, 361 n.8 (7th Cir. 1995); Williamson v. Tucker, 645 F.2d 404, 415 n.9 (5th Cir. 1981), and the jurisdictional amount in controversy (even if considered to overlap with the merits) is determined by "good faith" allegations, not proof after trial of the amount in controversy by a preponderance of the evidence. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); 14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3702, at 27.

Third, the majority states that "inasmuch as the Board is not an Article III court, we fail to see how the backdrop of standards applicable to Article III court jurisdiction

---

[15]     See Durr v. Nicholson, 400 F.3d 1375, 1382 (Fed. Cir. 2005) (where Rule 3(c) of the Rules for the Court of Appeals for Veterans Claims ("CAVC") was enacted against the background of FRAP, the term "notice of appeal" in CAVC Rule 3(c) is given the same meaning as in FRAP 3(c)).

suggests that Congress intended those standards to apply to this quasi-judicial administrative agency." Maj. Op. at 26.

While the adjudicatory procedures and evidentiary rules in courts and administrative agencies may differ, we deal here with a jurisdictional issue that the majority agrees is of "fundamental importance." Maj. Op. at 22. Under these circumstances, cases such as MCI teach us that agency disclaimers of jurisdiction must be carefully examined. Given this mandate, it seems particularly appropriate to look to the traditional treatment of jurisdictional issues in the judicial context for guidance. Indeed, in Cornelius v. Nutt, on which the majority relies, Maj. Op. at 28, and which involved the very same statue and regulation as are involved here, the Supreme Court recognized the pertinence of the judicial harmful error rule to the interpretation of the administrative harmful error rule in 5 USC § 7701 and 5 CFR § 1201.56(c)(3), stating that it "would be natural . . . to assume that Congress intended the term 'harmful error' in § 7701(c)(2)(A) to have the same meaning that it has in the judicial context, that is, error that has some likelihood of affecting the result of the proceeding." Cornelius v. Nutt, 472 U.S. 657, 658 n.9 (1985) (emphasis added).[16]

---

[16] In Cornelius the Court deferred to the Board's determination that the standard should be applied to arbitrations as well as Board-adjudicated cases. Cornelius, 472 U.S. at 660-61.

See also Steadman v. S.E.C., 450 U.S. 91, 102 (1981) (section 7(c) of the APA providing for agency sanction proceedings interpreted to adopt "the traditional preponderance-of-the-evidence standard" for decisions on the merits); U.S. v. Euge, 444 U.S. 707, 711 (1980) (IRS may compel production of handwriting samples because the "duty to appear and give testimony . . . has traditionally encompassed a duty to provide some forms of nontestimonial, physical evidence, including handwriting exemplars."); Bieber v. Dep't of Army, 287 F.3d 1358, 1361-63 (Fed. Cir. 2002) (applying the standard of recusal of federal judges to assess the bias of an administrative judge).

There is nothing in the text, structure or history of the statute here to suggest that Congress intended to authorize the agency to adopt a restrictive jurisdictional standard and to depart from the well established non-frivolous allegation standard. The rejection of the federal-court summary judgment procedure (relied on by the majority) can hardly be read to reflect a congressional purpose to restrict Board jurisdiction. To the contrary, Congress' decision to preclude summary judgment and thus require an automatic merits hearing forcefully demonstrates the congressional purpose to protect the rights of federal employees to have their claims addressed on the merits. See Crispin v. Dep't of Commerce, 732 F.2d 919, 922 (Fed. Cir. 1984). Absent any indication that Congress desired to adopt a more restrictive rule than the federal non-frivolous allegation standard, we should assume that Congress enacted section 7701 with the expectation that these long-standing jurisdictional principles would apply.[17]

IV

If there were any doubt about the appropriateness of applying the non-frivolous allegation standard in the constructive action context, that doubt would be dispelled by the majority's own opinion. Ironically, the majority today leaves in place Spruill v. Merit Systems Protection Board, 978 F.2d 679 (Fed. Cir. 1992), and its progeny, which utilized the same approach to determining Board jurisdiction in the Whistleblower Protection Act ("WPA") context that the majority rejects in the context of section 7701.

---

[17] The majority also relies on a pre-CSRA case, Dabney v. Freeman, 358 F.2d 533 (D.C. Cir. 1965), as holding that non-frivolous claims do not establish jurisdiction. Maj. Op. at 27. There is no indication that Congress was aware of Dabney; that the jurisdictional issue was argued in Dabney; or that the court considered the uniform federal jurisdictional rule where the merits and jurisdiction overlap. And, of course, Dabney did not address section 7702 since it had not yet been enacted.

As with adverse action cases, in Individual Right of Action ("IRA") appeals the issues of jurisdiction--the making of a protected disclosure and the determination that the protected disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action--overlap with the merits. In the IRA context the "plain language" of the very same Board regulation on which the majority relies here requires that jurisdiction be determined by a "preponderance of the evidence." 5 C.F.R. § 1201.56. In the IRA context also, until Spruill, the Board required proof of jurisdiction by a preponderance of the evidence. Geyer v. Dep't of Justice, 63 M.S.P.R. 13, 16-17 (1994), overruled by Rusin v. Dep't of Treasury, 92 M.S.P.R. 298 (2002).

Nevertheless, relying on fundamental principles of federal jurisdiction and citing federal jurisdiction cases such as Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246 and Bell v. Hood, 327 U.S. 678, Spruill concluded that the Board's IRA jurisdiction must be determined by a non-frivolous allegation standard. Spruill, 978 F.2d at 687-88. The Spruill court held that as a general matter, "jurisdiction existed [ ] as long as the petition asserted nonfrivolous claims." The court applied the "basic principle" of federal court jurisdiction that "jurisdiction . . . exist[s] on the basis of well-pleaded allegations in the complaint . . . ." Id. at 686, 688. The court then criticized Board decisions that dismissed claims containing non-frivolous allegations "for lack of jurisdiction," when those claims should have been dismissed on the merits. Id. at 688.[18]

---

18      The Spruill court explained:

[W]hen we refer to cases involving the "jurisdiction" of the MSPB, we do not include cases the merits of which turn on the existence of a state of facts when those facts happen also to be the factual predicate for jurisdiction. When a nonfrivolous claim for relief has been asserted before the Board, and the outcome is determined by whether the facts support

<u>Spruill</u> has been repeatedly reaffirmed. <u>Yunus v. Dep't of Veterans Affairs, 242 F.3d 1367, 1367, 1372 n.1 (Fed. Cir. 2001)</u>; <u>see also</u> <u>Spencer v. Dep't of the Navy</u>, 327 F.3d 1354, 1356 (Fed. Cir. 2003); <u>Schmittling v. Dep't of the Army</u>, 219 F.3d 1332, 1336 (Fed. Cir. 2000); <u>Willis v. Dep't of Agric.</u>, 141 F.3d 1139, 1142 (Fed. Cir. 1998).

Ironically, the majority today repeatedly cites <u>Spruill</u> as authority while rejecting the application of its foundational reasoning in the constructive action context. If a non-frivolous allegation standard applies to IRA appeals before the Board and requires rejection of the Board's preponderance standard in that context, there is simply no basis for rejecting an identical jurisdictional standard for constructive adverse action cases. In fact, <u>Spruill</u> itself explicitly and at some length made clear that the non-frivolous allegation standard did apply to constructive action cases generally.[19]

While approving the non-frivolous allegation standard for IRA appeals, the majority opinion, in an ultimate incongruity, overrules our decision in <u>Dick v. Department of Veterans Affairs</u>, 290 F.3d 1356 (Fed. Cir. 2002), even though it too was a decision

---

that claim, a decision by the Board that they do not is a failure to prove the claim, not a lack of jurisdiction in the Board.

<u>Spruill</u>, 978 F.2d at 689.

[19] The court stated in full:

> [I]n a case in which a petitioner before the MSPB alleges that he has been wrongly terminated from Federal employment, the Government's defense is sometimes that the petitioner voluntarily resigned, in which case there could not be a wrongful removal. The MSPB, after full hearing and upon concluding from the evidence that there was a voluntary resignation, will sometimes dismiss the claim "for lack of jurisdiction." . . . . The difficulty with this is that obviously the MSPB had jurisdiction to hear and decide the case. The failure was simply petitioner's inability to establish a key factual element of his cause of action. The MSPB correctly concluded that it could not grant relief on those facts, but it was not for lack of jurisdiction.

<u>Spruill</u>, 978 F.2d at 688.

applying a non-frivolous allegation standard in an IRA appeal. As best I can make out, the majority holds that in all IRA appeals other than those involving constructive adverse actions a non-frivolous allegation standard applies, but in IRA appeals involving constructive adverse actions jurisdiction must be established by a preponderance of the evidence. The majority does not, and cannot, explain why those two situations should be treated differently.

V

A final word should be said about our earlier en banc decision in Cruz, which the Board identified as the barrier to the application of a non-frivolous allegation standard and which the majority states may continue to bar the Board from adopting such a standard. See Maj. Op. at 37; Lloyd, 96 M.S.P.R. 518, 522; Id. at 526-27 (McPhie, Chairman, concurring); see also Bartels v. United States Postal Serv., 98 M.S.P.R. 280, 285 (2005). The en banc court is not, of course, bound by Cruz. Indeed, one question the majority addresses is "whether this court en banc should change anything in our earlier en banc decision in Cruz . . . ." Maj. Op. at 23. In any event, Cruz did not decide this issue.

The en banc court in Cruz considered the issue of whether section 7702 provides the Board with jurisdiction over both the adverse action claim and the discrimination claim.[20] We held that section 7702 was not an independent source of jurisdiction. The Board could not adjudicate a discrimination claim under section 7702 unless it independently had jurisdiction under section 7701. See Cruz, 934 F.2d at 1248. I do

---

[20] The question presented to the en banc court in Cruz was: "Whether an allegation of title VII discrimination . . . expands the jurisdiction of the [Board] . . . where the board had already determined that it lacked jurisdiction under 5 U.S.C. § 7512 . . . ." 934 F.2d at 1243 (emphases added).

not take issue with that holding, but Cruz did not present the issue of the jurisdictional standard. The question presented in Cruz inherently assumed that the question of section 7701 jurisdiction had already been decided adverse to the employee, and did not require the court to choose between a preponderance of the evidence standard and a non-frivolous allegation standard for section 7701 jurisdiction. The standard for section 7701 jurisdiction was likewise not briefed by the parties.

The Board, and the Department of Homeland Security on appeal, have nonetheless found it significant here that we stated in Cruz that "the Board never had jurisdiction" under section 7701. Id. at 1247. But in finding an absence of Board jurisdiction under section 7701, we did not endorse the preponderant evidence standard used by the administrative judge. Rather, we found that "Cruz [ ] submitted no evidence . . . indicating that his resignation was involuntary." Id. at 1244. Thus, to the extent that Cruz said anything at all about the proper standard under section 7701, it only rejected the sufficiency of bare allegations, unsupported by evidence, to support jurisdiction. It did not address the issue of whether the proper standard for jurisdiction under section 7701 is a non-frivolous allegation standard or a preponderance of the evidence standard. Cruz, 934 F.2d at 1244. The non-frivolous allegation standard was thus not rejected by Cruz. Nor should it be rejected here.

* * *

Today's decision crafts an unfortunate and ill-conceived exception to our jurisprudence applying the non-frivolous allegation standard to determine the jurisdiction of the Board. The effect of the decision is to defeat Board jurisdiction over an important class of cases involving discrimination. Unlike the majority I would hold that the Board's

04-3442                                    19

jurisdiction is established by non-frivolous allegations. Because Garcia has without question made a non-frivolous allegation of a violation of the Rehabilitation Act, I would hold that the Board has jurisdiction over her claim, and remand for a hearing on the merits.