## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

NICOLE S. ELMORE,
        Appellant,

            v.

DEPARTMENT OF VETERANS
    AFFAIRS,
        Agency.

DOCKET NUMBER
CH-0752-16-0416-I-1

DATE: February 2, 2023

## THIS ORDER IS NONPRECEDENTIAL[1]

Tinita Cole, Dayton, Ohio, for the appellant.

Demetrious A. Harris, Esquire, and Anita Carmichael, Dayton, Ohio,
    for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### REMAND ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the agency's petition for review, VACATE the initial decision, and REMAND the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      On November 9, 2015, the parties entered into a settlement agreement resolving the appellant's prior removal appeal. Initial Appeal File (IAF), Tab 4 at 6-9. Pursuant to the terms of the settlement agreement, the agency agreed, in relevant part, to rescind the appellant's removal and to reinstate her to the position of Medical Support Assistant (MSA) after she served a 5-day suspension. *Id.* at 8. In exchange, the appellant agreed to the provisions of a Last Chance Agreement (LCA), which provided, in relevant part, that she would adhere to Section IX of the agency's Employee Handbook, VA Directive 5011 (Hours of Duty and Leave), and all other policies, procedures, and processes regarding interactions with staff and veterans. *Id.* at 6, 9. The appellant further agreed that her failure to comply with the terms and conditions of the LCA would result in her immediate removal and that she waived all appeal rights in connection with a removal pursuant to the LCA. *Id.*

¶3      On January 5, 2016, the agency reinstated the appellant. IAF, Tab 1 at 8. On March 24, 2016, the Program Director of the Mental Health Service (Program Director) notified the appellant that she was being charged with 2 hours of absence without leave (AWOL) in connection with an unauthorized absence from her workstation between 8:30 a.m. and 10:30 a.m. on March 1, 2016. IAF, Tab 4 at 11. He notified her that he considered her response that she was, in fact, at her workstation between 8:00 a.m. and 9:45 a.m. on that date, but decided to proceed with the charge because her response was inconsistent with the statements of two other employees and his own observation. *Id.* at 11, 16. As a result, the agency reinstated the appellant's prior removal and removed her from her position effective May 13, 2016. IAF, Tab 1 at 8-9.

¶4    The appellant appealed her removal to the Board, arguing that she did not violate the LCA. *Id.* at 1-2, 14-15. After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that the appellant proved that she did not violate the terms of the LCA and, therefore, that the appeal rights waiver was not enforceable. IAF, Tab 24, Initial Decision (ID) at 11-12. Accordingly, she reversed the appellant's removal. ID at 12.

¶5    The agency petitioned for review of the initial decision, and the appellant responded in opposition to the agency's petition for review. Petition for Review (PFR) File, Tabs 1, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6    The Board lacks jurisdiction over an action taken pursuant to an LCA in which an appellant waives her right to appeal to the Board. *Bruhn v. Department of Agriculture*, 124 M.S.P.R. 1, ¶ 9 (2016). An appellant may establish that an appeal rights waiver should not be enforced against her by showing, as relevant here, that she complied with the LCA. *Id*. If an appellant raises a nonfrivolous allegation that she complied with an LCA, she is entitled to a jurisdictional hearing to determine whether she, in fact, complied with the LCA.[2] *Id.* At the hearing, the appellant must prove jurisdiction by a preponderance of the evidence.[3] *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1344 (Fed. Cir. 2006)(en banc); 5 C.F.R. § 1201.56(b)(2)(i)(A).

¶7    Here, as noted above, the appellant argued that she did not breach the LCA because she was not AWOL, as alleged by the agency. IAF, Tab 1 at 15, Tab 4 at 2. In support of this claim, she submitted her March 9, 2016 response to the

---

[2] Nonfrivolous allegations of Board jurisdiction are allegations of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the matter at issue. 5 C.F.R. § 1201.4(s).

[3] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

Program Director regarding the potential AWOL charge, in which she stated that she was at her desk between 8:00 a.m. and 9:45 a.m., at which time she took her break, and returned to her desk at 10:07 a.m. IAF, Tab 4 at 16. The appellant explained that, during her break, she was assisting a veteran in the hallway and called an agency Social Worker to further assist the veteran. *Id.* She stated that she and the veteran met the Social Worker in the hallway and talked to him together for approximately 15 minutes. *Id.* She also submitted a number of witness statements, some of which supported her version of events and some of which supported the agency's position that the appellant was not at her work station for 2 hours, as well as documents showing work she performed at 8:35 a.m., 8:37 a.m., 10:28 a.m., 10:36 a.m., 10:46 a.m., and 11:00 a.m. on the date in question. *Id*. at 1-2, 12-15, 17-20, 25-47. Because of the conflicting evidence, the administrative judge found that it was appropriate to hold a jurisdictional hearing to determine whether the appellant breached the LCA by being away from her workstation for 2 hours on March 1, 2016, in violation of agency policies. IAF, Tab 7.

¶8      At the hearing, the Program Director conceded that the appellant's 2 hours of AWOL should be reduced to account for her authorized 15-minute break, but he maintained that she was away from her desk between 8:30 a.m. and 10:30 a.m. and that her duties required her to be at her desk. Hearing Transcript (HT) at 7-14 (testimony of the Program Director). He testified that he was in and out of the workstation area during that period and noticed for the first time at around 8:30 a.m. that the appellant was not at her desk. HT at 8 (testimony of the Program Director). He also testified that, because the Mental Health Clinic was understaffed that morning, he called T.D., another MSA, to fill in and that she arrived on the unit at about 9 a.m. *Id.* According to the Program Director, T.D. informed him at 10 a.m. that the appellant had not been to the unit since she arrived. *Id.* He further testified that he personally saw the appellant return to the unit at around 10:30 a.m. *Id.* at 9.

¶9        T.D. confirmed the Program Director's testimony, testifying that she arrived on the unit at approximately 9 a.m., that the appellant was not at her desk at that time, and that the appellant did not return to the unit until approximately 10:30 a.m.  HT at 33-35 (testimony of P.D.).  Her earlier report of contact similarly stated that she came to the Mental Health Clinic at around 9 a.m. on March 1, 2016, to cover the staffing shortage and that the appellant was not there until approximately 10:30 a.m. or 10:45 a.m.  IAF, Tab 4 at 14.

¶10        The agency's Suicide Prevention Case Manager (Case Manager) testified that she saw the appellant in the hallway chatting with two men at 8:25 a.m.— before her daily 8:30 a.m. meeting—and saw her again chatting with the same two men near a stairwell after the meeting.  HT at 25, 27-28 (testimony of the Case Manager).  Her earlier written report of contact provided the same information, but clarified that she saw the appellant talking to the two men near the elevator after her meeting at approximately 10:45 a.m. on the date in question IAF, Tab 4 at 13.  She further testified that she saw T.D. in the Mental Health Clinic that morning.  HT at 28 (testimony of the Case Manager).

¶11        Contrary to the testimonies of the Program Director, T.D., and the Case Manager, the appellant testified that she was at her duty station between 8 a.m. and 9:45 a.m., that she took her authorized break at 9:45 a.m., and that she returned to her duty station at 10:07 a.m. on March 1, 2016.  HT at 21-23 (testimony of the appellant).  She testified that, contrary to the testimony of the agency witnesses, T.D. did not work in the Mental Health Clinic that morning. *Id.*

¶12        A Clinical Nurse Specialist testified that, as stated in her March 9, 2016 report of contact, she saw the appellant at her duty station at approximately 9:30 a.m., which she remembered because the appellant said "hello" to a patient she had just seen.  HT at 18 (testimony of the Clinical Nurse Specialist); IAF, Tab 4 at 20.

¶13      In the initial decision, the administrative judge found that all of the witnesses testified in a straightforward and truthful manner, but concluded that the agency's evidence was inconsistent with the record as a whole and that the evidence supporting the appellant's position was more persuasive. ID at 9-11. Specifically, she found that the appellant's version of events was supported by the hearing testimony of the Clinical Nurse Specialist who testified that she saw the appellant at her workstation at 9:30 a.m. and the unsworn written statements of three other MSAs, the Social Worker, and the veteran. *Id.* The written statements of two MSAs confirmed the appellant's statement that T.D. did not in fact work on the unit on the morning in question, further noting that T.D. did not report to the unit until approximately 3:50 p.m.[4] IAF, Tab 4 at 17-18. One of these statements also confirmed the appellant's testimony that the appellant left for a break at approximately 9:45 a.m. with a veteran and that she was not gone for 2 hours. *Id.* at 17. The Social Worker's written statement confirmed the appellant's earlier written statement regarding her meeting with the veteran, stating that she called him at 9:58 a.m., he went to meet her and the veteran on the stairway in front of the service elevator, and he spoke to them for approximately 12 to 15 minutes. *Id.* at 15. The veteran's written statement indicated that he spoke to the appellant at the front desk for approximately 5 minutes after making his follow-up appointment. *Id.* at 19. He stated that the appellant informed someone that she was going to take her break and that she walked outside to the waiting area with him, talked to him for approximately 3 to 4 minutes, and called another employee to assist him. *Id.* He stated that they walked back to the stairway to meet the other employee and they spoke to him for approximately 10 minutes before the appellant left. *Id.* Another MSA submitted

---

[4] As noted above, the Program Director testified that he called T.D. on the morning of March 1, 2016, and asked her to cover a staffing shortage on the unit. HT at 8 (testimony of the Program Director). He further testified that T.D. arrived on the unit at 9 a.m. *Id.*

a written statement indicating that she inquired about the appellant's whereabouts at approximately 9:45 a.m. or 10 a.m. on March 1, 2016, and that, upon the appellant's return, she stated that she had been on a break. *Id.* at 12.

¶14    The administrative judge did not credit the hearing testimony of the Case Manager, finding that, although there was no evidence of bias or motivation to lie on her part, her testimony that she saw the appellant talking to the two men at 8:25 a.m. and 10:45 a.m. on March 1, 2016, conflicted with the "uncontroverted documentation" showing that the appellant was at her desk performing her duties at 8:35 a.m., 8:37 a.m., 10:28 a.m., 10:36 a.m., and 10:46 a.m.  ID at 10.  She also found that the Case Manager's testimony—that she recalled hearing other MSAs wondering about the appellant's whereabouts—was inconsistent with the statements of the two other MSAs who indicated that, except for the period between 9:45 a.m. and 10 a.m., they were aware of the appellant's whereabouts. *Id.*

¶15    The administrative judge additionally found that, although there was no evidence or motivation to lie on the part of T.D., she could not credit her statements in light of significant, contradictory evidence in the record.  ID at 11. In particular, the administrative judge found that T.D.'s testimony that she arrived at the Mental Health Clinic at 9 a.m. on March 1, 2016, was contradicted by the appellant and two other MSAs who all stated that T.D. did not work on the unit that morning. *Id.*  The administrative judge also appeared to find that T.D.'s testimony that the appellant did not return to the unit until 10:30 a.m. or 10:45 a.m. conflicted with the Program Manager's testimony that she informed him that the appellant had returned at 10 a.m.  ID at 10-11.

¶16    In light of these findings, the administrative judge concluded that the appellant was away from her desk from approximately 9:45 a.m. to approximately 10:07 a.m. on the date in question, a time period that exceeded her authorized break by 7 minutes.  ID at 11.  The administrative judge declined to sustain the charge of AWOL for a 7-minute period and, by extension, to find that the

appellant violated the LCA. *Id.* She concluded that, although the appellant may have minimally exceeded her authorized break period, the record reflects that her whereabouts were known, that she was still on her unit, and that she was assisting a veteran. *Id.* Therefore, the administrative judge found that the appellant's conduct did not violate the agency's policy and that she did not breach the LCA. *Id.*

¶17 On review, the agency argues that the administrative judge made erroneous credibility determinations, improperly credited the written statements over hearing testimony, erroneously referred to some written statements as testimony, failed to account for the fact that the documentation showing when the appellant performed duties also shows that she did *not* perform any duties between 8:37 a.m. and 10:28 a.m., and misconstrued the hearing testimony of the Program Director. PFR File, Tab 1 at 6-12.

¶18 In resolving credibility issues, the trier of fact must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Thus, the Board may overturn demeanor-based credibility determinations when the administrative judge's findings are incomplete,

inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Rapp v. Office of Personnel Management*, 108 M.S.P.R. 674, ¶ 13 (2008).

¶19 As noted above, the administrative judge found that all of the agency witnesses testified in a straightforward and truthful manner but that the evidence supporting the appellant's version of events was more persuasive. ID at 9. Although we defer to the administrative judge's determination regarding the demeanor of each witness, we agree with the agency that the administrative judge incorrectly represented the Program Director's hearing testimony, which appeared to factor into her credibility determinations. Specifically, the administrative judge found that T.D.'s hearing testimony that the appellant did not return to the unit until 10:30 a.m. or 10:45 a.m. was contradicted by the Program Manager's testimony that T.D. informed him that the appellant returned at 10 a.m. ID at 10-11. The Program Manager actually testified, however, that T.D. informed him at 10 a.m. that she had not yet seen the appellant and that he noticed the appellant return to the unit at 10:30 a.m. HT at 9 (testimony of the Program Director). He did not testify that T.D. informed him at 10 a.m. that the appellant had returned. *Id.*

¶20 In addition, we agree with the agency that the administrative judge failed to properly weigh the testimonial and documentary evidence of record. Specifically, in crediting the appellant's version of events over the agency's version of events, the administrative judge relied heavily on the unsworn written statements of individuals who did not testify at the hearing. ID at 9-11; IAF, Tab 4 at 12, 15, 17-19. Although hearsay evidence is admissible in Board proceedings, assessment of the probative value of hearsay evidence necessarily depends on the circumstances of each case. *Adamsen v. Department of Agriculture*, 116 M.S.P.R. 331, ¶ 16 (2011); *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981). The Board generally evaluates the probative value of hearsay evidence by considering various factors that include the availability of persons with firsthand knowledge to testify at the hearing, whether the out-of-court statements

were sworn, whether the declarants were disinterested witnesses to the events and whether their statements were routinely made, the consistency of the out-of-court statements with other statements and evidence, whether there is corroboration or contradiction in the record, and the credibility of the out-of-court declarant. *Adamsen*, 116 M.S.P.R. 331, ¶ 16; *Wallace v. Department of Health & Human Services*, 89 M.S.P.R. 178, ¶¶ 6-11 (2001), *review dismissed*, 41 F. App'x 455 (Fed. Cir. 2002). Here, however, the administrative judge failed to consider any of these factors in crediting the unsworn out-of-court written statements over the hearing testimony of the agency witnesses.[5] ID at 9-11.

¶21 Moreover, it does not appear that the administrative judge appropriately considered or weighed the hearing testimony of the agency witnesses. Generally, live testimony is more probative than an out-of-court statement. *Social Security Administration v. Whittlesey*, 59 M.S.P.R. 684, 692 (1993), *aff'd*, 39 F.3d 1197 (Fed. Cir. 1994) (Table); *Dubiel v. U.S. Postal Service*, 54 M.S.P.R. 428, 432 (1992) (stating that the probative value of unsworn hearsay statements regarding facts at issue is generally reduced when contradicted by live testimony regarding the same matter); *Robinson v. Department of Health & Human Services*, 39 M.S.P.R. 110, 115 (1988) (finding that hearsay evidence may not be sufficiently probative, in light of contradictory live testimony, to sustain an agency's burden by preponderant evidence). We agree with the administrative judge that the Case Manager's testimony that she saw the appellant at 8:25 a.m. and 10:45 a.m. may be entitled to less weight because it conflicts with the

---

[5] The record reflects that the administrative judge granted all of the appellant's requested witnesses, including the veteran and the Social Worker. IAF, Tab 12. The appellant subsequently withdrew her request for the Social Worker to testify at the hearing. IAF, Tab 18 at 3. The veteran, although approved as a witness, did not testify at the hearing. HT at 3. It does not appear that either party called as witnesses the three MSAs whose written statements supported the appellant's version of events. IAF, Tab 12 at 3. It is unclear from the record, however, whether any of the individuals who submitted written statements in support of the appellant's version of events were unavailable to testify at the hearing.

documentation showing that the appellant performed her duties 8:35 a.m. and 10:26 a.m. on March 1, 2016. IAF, Tab 4 at 25-38, 44. However, the administrative judge did not explain why the unsworn written statements are entitled to more weight than the straightforward hearing testimony of the Program Director and T.D, which, as discussed above, are consistent with each other.[6] ID at 9-11.

¶22    In light of the foregoing, we find that remand is necessary to allow further development of the record and, if appropriate, a supplemental hearing. In addition, the administrative judge should order the agency to submit time and attendance records, if available, or other evidence showing when T.D. worked on March 1, 2016. The administrative judge then should explore the issues identified above, determine the appropriate weight that each type of evidence is due, and issue a new initial decision fully addressing all of the record evidence.

**ORDER**

¶23    For the reasons discussed above, we REMAND this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                                    /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.

---

[6] As correctly noted by the agency, the administrative judge improperly referred to the written statements of two MSAs as testimony. ID at 10 (noting that the other MSAs both testified that they were aware of the appellant's whereabouts); IAF, Tab 4 at 12, 17. It is unclear, however, whether this error factored into her credibility analysis.