**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROSE MARIE EDWARDS,
Appellant,

v.

DEPARTMENT OF THE NAVY,
Agency.

DOCKET NUMBER
DC-3443-17-0636-I-1

DATE: August 29, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Kevin L. Owen</u>, Esquire, and <u>Andrew J. Perlmutter</u>, Esquire, Silver Spring,
Maryland, for the appellant.

<u>Patricia Reddy-Parkinson</u>, Esquire, Portsmouth, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her constructive removal appeal for lack of jurisdiction without a hearing.  For the reasons discussed below, we GRANT the appellant's petition

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant was a GS-12 Auditor for the agency.  Initial Appeal File (IAF), Tab 8 at 26.  On or about May 8, 2016, the appellant submitted to the agency's Civilian Benefits Center an application for basic retirement under the Civil Service Retirement System (CSRS), to be effective February 3, 2017.  IAF, Tab 2 at 2, 9, Tab 8 at 4, 27-30.  Shortly before she filed her application, the appellant had obtained an annuity estimate, using the agency's Employee Benefits Information System (EBIS).  IAF, Tab 7 at 9-10, Tab 9 at 4.  According to the EBIS estimate, the appellant could expect to receive an unreduced monthly annuity of approximately $3,640 upon her February 2017 retirement.  IAF, Tab 9 at 4.

¶3      Immediately upon receiving the appellant's application, the Civilian Benefits Center assigned the appellant a retirement specialist to help her with the process.  IAF, Tab 2 at 9.  According to the appellant, she discussed her plans with the retirement specialist and informed her that she "was excited about the monthly annuity amount of $3,640" as reflected in the EBIS estimate.  IAF, Tab 7 at 10.  The appellant states that the retirement specialist promised to forward her a CSRS benefit estimate and service report to review.  IAF, Tab 7 at 10.

¶4      Six months passed, and in November 2016, the appellant still had not received the CSRS benefits estimate and service report.  IAF, Tab 7 at 10-11, Tab 8 at 4, 15.  The appellant alleges that, on November 18, 2016, she contacted the retirement specialist again to inquire about the status of this information.  IAF, Tab 7 at 10.  According to the appellant, the retirement specialist told her that she would mail the estimate and report the following week.  *Id.*  The appellant asserts that, after she failed to receive these documents and her

retirement date drew nearer, she continued trying to contact the retirement specialist, but her calls and emails went unanswered and unreturned. *Id.* at 10-11.

¶5 The appellant separated from service on February 3, 2017, as scheduled. IAF, Tab 8 at 26. Approximately 1 month later, on March 1, 2017, the agency finally mailed the appellant her CSRS benefit estimate and service report. *Id.* at 15. These documents indicated that certain periods of part-time service and service for which the appellant had received a refund of retirement contributions would not be used in calculating her annuity; therefore, the appellant's gross monthly annuity would be $1,991—not $3,640, as reflected in the EBIS estimate. *Id.* at 17-24. The record indicates that, in the end, the Office of Personnel Management (OPM) determined the appellant's gross monthly annuity to be $1,810.00.[2] IAF, Tab 2 at 48.

¶6 On June 30, 2017, the appellant filed a Board appeal, seeking reinstatement to her Auditor position on the basis that her retirement was involuntary. IAF, Tab 1. She requested a hearing. *Id.* The administrative judge notified the appellant of the jurisdictional standard for a constructive removal appeal and the need to make a nonfrivolous allegation of jurisdiction in order to receive her requested hearing. IAF, Tab 2 at 2-5. After the close of the record, the administrative judge issued an initial decision, dismissing the appeal for lack of jurisdiction without a hearing. IAF, Tab 10, Initial Decision (ID). She found that the agency did not provide the appellant any misinformation, and the appellant failed to make a nonfrivolous allegation that she reasonably relied on the inaccurate EBIS annuity estimate when she decided to retire. ID at 7-9.

---

[2] The agency and OPM notified the appellant of her option to augment the annuity by making a deposit or redeposit for parts of her non-credited service. IAF, Tab 2 at 39-40, 42, 46-48. OPM informed the appellant that she could increase her monthly annuity to $3,350 by making a redeposit of $50,864, or to $3,306 by making a deposit of $40,421. *Id.* at 48. However, the appellant determined that she could not come up with that kind of money on short notice, so she declined to make a deposit. IAF, Tab 10 at 15.

¶7	The appellant has filed a petition for review, disputing the administrative judge's jurisdictional analysis.  Petition for Review (PFR) File, Tab 1.  The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response.  PFR File, Tabs 3-4.

## ANALYSIS

¶8	To establish jurisdiction over a constructive removal appeal, an appellant must prove by preponderant evidence that (1) she lacked a meaningful choice in her resignation or retirement; and (2) it was the agency's wrongful actions that deprived her of that choice.  *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013).  Once an appellant makes a nonfrivolous allegation of Board jurisdiction, i.e., an allegation of fact that, if proven, would establish the Board's jurisdiction, she is entitled to a hearing on the jurisdictional issue.  *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1344 (Fed. Cir. 2006) (en banc); *Thomas v. Department of the Navy*, 123 M.S.P.R. 628, ¶ 11 (2016).

¶9	The Board has recognized numerous bases for constructive adverse actions, including retirement decisions that are based on misinformation.  *Bean*, 120 M.S.P.R. 397, ¶¶ 8-9.  However, even when an employee retires based on misinformation, her retirement will only amount to a constructive removal if her reliance on that misinformation was the fault of the Government.  *Id.*, ¶ 9; *see Holser v. Department of the Army*, 77 M.S.P.R. 92, 95 (1997).

¶10	In this case, the administrative judge found that the agency was not at fault for the appellant's misunderstanding of the amount of annuity that she would receive upon retirement.  ID at 5-9.  The administrative judge found that EBIS specifically informed the appellant that the annuity estimate that it generated might be "significantly overstated" if the appellant had any part-time service or unpaid deposits or redeposits (of which the appellant had both).  ID at 6-7; IAF, Tab 8 at 12.  She also observed that EBIS warned the appellant that she "should not base a decision to retire on the data contained here."  ID at 7; IAF, Tab 8

at 12. The administrative judge further found that, apart from this EBIS report, which the appellant knew or should have known not to rely on in making a retirement decision, the agency did not provide the appellant any misleading information to induce her retirement. ID at 7-9. She concluded that the agency's failure to properly counsel the appellant about her retirement was not the same thing as misinforming her about her retirement and that the appellant's decision to retire based on incomplete information did not amount to a constructive removal. ID at 8-9.

¶11     On petition for review, the appellant argues that, even in the absence of affirmative misinformation, lack of information may be sufficient to support a claim of constructive removal. PFR File, Tab 1 at 6-9. We agree with the appellant that this can be true under certain circumstances. The important question is not whether the appellant's theory of the case is based on misinformation or lack of information; the important question is how the facts of the case bear upon the ultimate jurisdictional issues of voluntariness and fault. *See Bean*, 120 M.S.P.R. 397, ¶ 8.

¶12     In this case, we find that the appellant has made a nonfrivolous allegation of jurisdiction under the theory that she based her retirement on inaccurate information, which the agency had a duty to correct but did not. "An employee action is considered to be involuntary if it results from the agency's failure to correct erroneous information that it has reason to know that the employee is relying on." *Timberlake v. U.S. Postal Service*, 76 M.S.P.R. 172, 175 (1997); *Drummond v. Department of Veterans Affairs*, 58 M.S.P.R. 579, 583-84 (1993). As set forth above, the appellant alleged that she informed the retirement specialist in or around May 2016 that she was "excited" about the $3,640 monthly annuity estimate that she obtained from EBIS. IAF, Tab 7 at 10. However, over the next 9 months, the Civilian Benefits Center ignored the appellant's multiple requests for an independent annuity estimate and waited until after her separation

from service to inform her that the EBIS estimate she was relying on was overstated by more than 30%. IAF, Tab 8 at 4-5, 15-16.

¶13 Even considering the stock warning generated by EBIS that the annuity estimate might be inaccurate and should not form the basis for a retirement decision, it appears undisputed that the agency failed to give the appellant any alternative. IAF, Tab 8 at 4-5, 15-16. This is so even though the agency was required to give the appellant an accurate and timely annuity estimate both under its own regulations and, if the appellant is to be believed, because the retirement specialist knew that she was relying on an annuity benefits estimate that might be incorrect. IAF, Tab 7 at 10; Department of Defense Instruction 1400.25, vol. 830 § 3(a) (August 22, 2014), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/140025/140025_vol830.pdf. Furthermore, even though the appellant knew or should have known that the EBIS estimate might be unreliable, it is not clear that a reasonable person in her position might have expected that estimate to be off by more than 30%. Because the agency, despite multiple requests, failed in its obligation to give the appellant an accurate annuity estimate at any time during the 9 months leading up to her retirement, the appellant based her retirement decision on the best (and only) information that she had at the time, which information ultimately proved to be grossly inaccurate. Whether the appellant acted reasonably in doing so, and hence whether her retirement amounted to a constructive removal, are questions that can only be resolved after a hearing.

**ORDER**

¶14     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    /s/ for
_____
                                 Jennifer Everling
                                 Acting Clerk of the Board
Washington, D.C.